**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CHERYL A. HARRIS, Co-Administratix )
of the Estate of RYAN D. MASETH, )
deceased, and DOUGLAS MASETH, )
Co-Administrator of the Estate of RYAN )
D. MASETH, deceased, )
Plaintiffs, )
)
v. )       Civil Action No. 08-563
)       Judge Nora Barry Fischer
KELLOGG, BROWN & ROOT )
SERVICES, INC., )
Defendant. )

## <u>MEMORANDUM OPINION</u>

I.      INTRODUCTION

Once again, this Court turns to a legal issue arising out of the tragic death of Staff Sergeant

Ryan D. Maseth. Staff Sergeant Maseth was an active duty Army Ranger and Green Beret serving

with the 5th Special Forces Group (Airborne) of the United States Army who died on January 2,

2008 while stationed at the Special Operations Task Force-Central, Radwaniyah Palace Complex

("RPC")in Bahgdad, Iraq. (Docket No. 1 at ¶ 3; Docket No. 1-3 at ¶¶ 6, 8). Pending before the Court

is a Motion for Sanctions filed by Plaintiffs, Cheryl A. Harris and Douglas Maseth, executrix and

executor of the Estate of Ryan Maseth, respectively, (hereinafter "Plaintiffs"). (Docket No. 98).

Plaintiffs allege that Defendant Kellogg, Brown and Root Services, Inc. ("Defendant" or "KBR"),

with assistance of counsel, issued two press releases to local media outlets in violation of Local Rule

83.1(G) of the Local Rules for the Western District of Pennsylvania. (*Id*.). Defendant contends that

sanctions are not warranted under the circumstances. (Docket No. 106). Based on the following,

Plaintiffs' motion is DENIED.

II.     BACKGROUND

Plaintiffs' motion arises from Defendant's recent dissemination of two press releases to local media outlets, including the Pittsburgh Post-Gazette and Pittsburgh Tribune Review.  (Docket No. 98).  Those documents, titled "Facts About Electrocutions in Iraq" and "Summary of Confirmed and Suspected Deaths by Electrocution in Iraq (2003-2009)" were released to the local media outlets by Defendant's Director of Communications, Heather Browne, on February 19, 2009.  (Docket Nos. 98-3, 98-4).

The first document, "Facts About Electrocution Deaths in Iraq" describes itself as a "bullet paper" which "identifies examples of false or inaccurate allegations" regarding KBR's maintenance work in Iraq and "provides a summary of the relevant facts that demonstrate that these reports are incorrect."  (Docket No. 98-3 at 1).  The first section of this document, titled "Electrocutions Generally," asserts that the following "allegations" reported by the media are "plainly false":

> (1) KBR's maintenance work has been 'linked' to 18 electrocutions;
>
> (2) 18 electrocution deaths were caused by KBR's 'shoddy' electrical work; and,
>
> (3) 18 electrocutions occurred in similar circumstances at facilities maintained by KBR.

(*Id*.).  The document includes three "examples" of allegedly false or misleading statements that have been reported in the media including articles published in the Pittsburgh Post-Gazette and the New York Times.  (*Id*.).  A "Facts" section then provides bullet points describing "[a] breakdown of the circumstances surrounding each of the electrocution deaths."  (*Id.* at 2).  That section includes the following statements:

> KBR is aware of 18 soldiers whose deaths were confirmed by

2

> publicly available sources to be by electrocution;
>
> '[T]here is no evidence that KBR had any relevant maintenance responsibility or involvement' with '17 out of the 18 electrocutions; and,
>
> The Maseth incident ... involved a building over which KBR had contractual authority to perform only limited maintenance.

(*Id*.).  Five bullet points specifically address the deaths of 16 soldiers not related to this litigation.

(*Id*.).  Three bullet points then discuss the death of Sergeant Christopher Everett, while first acknowledging that "this incident is the subject of ongoing litigation."  (*Id*.).  A final bullet point states the following:

> One soldier died at a facility for which KBR had only limited maintenance responsibility.  Although KBR had notified the military that the building had a deficient electrical system, the military had not directed KBR to repair the system.  This is the incident involving SSG Maseth, described further below.

(*Id*. at 3).

"Below" is a two page section titled "SSG Maseth / Army CID Investigation" which explains that "[m]edia reports surrounding the death of SSG Maseth have included false and misleading statements, including the incorrect assertion that the Army CID investigation has concluded that SSG Maseth's death was due to 'negligent homicide.'" (*Id*.).  Several bullet points describe KBR's position that it was required only to provide "limited maintenance" to the building in which SSG Maseth died, and that "the military did not direct or authorize KBR to repair the deficient electrical system" in that building.  (*Id*. at 3-4).  This section states that the following "allegations" are "plainly false and have been rejected by the Army CID itself":

> (1)  Army CID concluded that KBR and KBR employees committed 'negligent homicide'; and,

> (2) Army CID concluded that the electrocution was caused by 'substandard work' by KBR.

(*Id*. at 4). Four bullet points next describe "examples of false or misleading media statements" related to these allegations including reports by the Pittsburgh Post-Gazette, ThePittsburghChannel.com and the Los Angeles Times. (*Id*.). Another "Facts" section refutes these "allegations" with additional bullet points including statements that "an Army CID spokesman publicly denied the allegations" and denied "that [the Army CID] had made any finding of negligent homicide." (*Id*. at 5).

A final section of this document contains a two page discussion of additional allegations of KBR's involvement in the electrocution of another soldier, Private First Class Justin Shults, as reported in the San Antonio Express-News. (*Id*. at 5-6). The document then ends without conclusion.

Despite the lengthy discussion of the circumstances surrounding Staff Sergeant Maseth's death, there is no mention of this litigation in the first document.

The second document, "Summary of Confirmed and Suspected Deaths by Electrocution in Iraq (2003-2009)" is a spreadsheet containing information regarding 19 soldiers whose deaths in Iraq have been linked to electrocutions. (Docket No. 98-4). The spreadsheet identifies the following information regarding each soldier: name, service, rank, hometown, date of death, location, reasons/details, KBR involvement at facility or location, and sources. (*Id*.). Regarding Staff Sergeant Maseth, the press release identifies the cause of his death as "electrocution due to the failure of three safety features of [a] water pump." (*Id*. at 1). The column titled "KBR Involvement at facility or location" states that: "Facility / KBR Limited Maintenance Only ... KBR was contracted

to perform only limited maintenance at this facility. KBR identified to the military the deficiencies in the buildings electrical system. The military did not direct KBR to repair these deficiencies until after the electrocution." (*Id.*). The identified source of this information is the following report: "Investigation into the Events Surrounding the Death of SSG Ryan Maseth on 2 January 2008 (Army Regulation 15-6 Investigation, Findings and Recommendations 26 January 2008), Department of the Army." (*Id.*). There is also no mention of this litigation in this spreadsheet.

III.   PROCEDURAL POSTURE

Plaintiffs' motion was filed on February 20, 2009. (Docket No. 98). The Court convened a status conference on February 23, 2009 to discuss the motion with counsel given Plaintiffs' request that they be granted certain relief, particularly the deposition of a KBR representative, Heather Browne, on February 26, 2009.[1] (Docket No. 102). The Court issued a briefing schedule, ruled that any proposed deposition of Heather Browne would be held in abeyance pending disposition of the motion and set the matter for oral argument on March 3, 2009. (Docket No. 101). Pursuant to the briefing schedule, Defendant filed its brief in opposition on March 2, 2009, including voluminous exhibits in support of its position.[2] (Docket Nos. 106, 107). The Court then heard oral argument on March 3, 2009. (Docket No. 108). During the course of same the Court questioned the application of the Pennsylvania Rules of Professional Responsibility and certain disciplinary board opinions.

_____

[1]

The Court also questioned whether this motion should be referred to the appointed Special Discovery Master pursuant to the Court's earlier Confidentiality and Protective Order. (Docket No. 91). At the status conference, the Court and the parties instead agreed that this matter should be resolved by the Court. (Docket No. 102).

[2]

Defendant's Exhibits A-M consist of the following documents related to the defense of this motion: news articles; television show transcripts; internet blog entries; internet forums; and, email communications between Plaintiffs and third parties. (Docket No. 107).

(*Id*.). At the argument, Defendant requested the opportunity to file a supplemental brief, which was filed on March 6, 2009. (Docket No. 112). Accordingly, this matter is now fully briefed and ripe for disposition.

IV.     DISCUSSION

In their motion, Plaintiffs allege that the press releases at issue contain false and misleading information and that "[t]he content and character of the documents released by KBR to the media appear to have involved KBR lawyers, and possibly KBR's lawyers of record in this action, Attorneys Luciana, Hamrock, Russell and Wickard." (Docket No. 98 at ¶ 13). Plaintiffs then argue that defense counsel's apparent involvement in the dissemination of the press releases constitutes a violation of Local Rule 83.1(G) of the United States District Court for the Western District of Pennsylvania and contend that such alleged conduct is "hypocrisy on the part of KBR as in its Motion for Protective Order (Docket No. 69), KBR specifically attempted to stop Plaintiffs from communicating with the media by a specific Order embodying Local Rule 83.1." (Docket No. 98 at ¶ 14).

Plaintiffs request that this Court order the following as a sanction for the alleged conduct: (1) that Heather Browne appear for a deposition regarding the composition and distribution of the documents released on February 19, 2009 and the involvement of counsel regarding the same; (2) that Defendant produce full and complete copies of all documents referenced in the press releases; (3) that Attorneys Luciana, Hamrock, Russell and Wickard be ordered to affirmatively aver to the Court the nature and extent of their participation in or knowledge of the drafting and dissemination of the press releases; and, (4) that the Court's December 15, 2008 Confidentiality and Protective Order be vacated. (Docket No. 98-2).

Defendant maintains in its response that it has a Constitutional "right to defend itself in the press against adverse negative publicity such as has been generated in this case." (Docket No. 106 at 3). Defendant further argues that neither it nor its counsel have violated Local Rule 83.1(G) and that Plaintiffs' motion is without factual or legal basis. (*Id*. at 4-6). Defendant also contends that the circumstances of this case present a situation in which its counsel is permitted to make public comment under Rule 3.6(c) of the Pennsylvania Rules of Professional Conduct. (*Id*. at 9-11). Finally, Defendant alleges that Plaintiffs have also disseminated false and misleading information to various media outlets, undermining their argument challenging Defendant's and its counsel's alleged conduct. (*Id*. at 11-20).

In its supplemental memorandum, Defendant highlights many of the above arguments and further advances the following in opposition to Plaintiffs' motion. (Docket No. 112). Defendant maintains that Plaintiffs have identified only extrajudicial statements made by representatives of Defendant, which are not subject to Local Rule 83.1(G), and none by its counsel, whom are subject to the Local Rule. (*Id*.). Defendant also contends that the press releases contain information which concern incidents unrelated to this litigation and that any facts that were disclosed regarding this litigation were obtained from publicly available sources. (*Id*.). Lastly, Defendant argues that the press releases' reference to the declaration of Jana Weston attached to Defendant's motion to dismiss under seal in this matter as well as to "KBR Internal Sources" do not violate the Court's Confidentiality and Protective Order. (*Id*. at 2-4).

As stated, Plaintiffs' motion alleges that Defendant and its counsel violated Local Rule 83.1(G). (Docket No. 98). The application of this Rule was discussed previously by this Court in the context of whether Local Rule 83.1(G) should be adopted as part of the Confidentiality and

Protective Order that has been issued in this case.  (*See* Docket No. 79).  In a Memorandum Order issued on October 27, 2008, this Court denied Defendant's motion to include a provision incorporating Local Rule 83.1(G) into the Confidentiality and Protective Order, finding in part that said provision was unnecessary as "the attorneys representing the parties in this action are bound by the Local Rules, the Pennsylvania Rules of Professional Conduct (as incorporated by section 1(G) of this Court's Practices and Procedures) and any other applicable federal, state or local law regarding their communications with the media, regardless of any agreement."  (*Id*. at 6).

Local Rule 83.1(G) currently provides as follows:

> [a] lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:
>
> > 1. Evidence regarding the occurrence or transaction involved.
> >
> > 2. The character, credibility, or criminal record of a party, witness, or prospective witness.
> >
> > 3. The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
> >
> > 4. His/her opinion as to the merits of the claims or defenses of a party except as required by law or administrative rule.
> >
> > 5. Any other matter reasonably likely to interfere with a fair trial of the action.

W.D.Pa.L.R. 83.1(G).  In *United States v. Wecht*, the United States Court of Appeals for the Third Circuit held that Local Rule 83.1(A), a rule similar to Local Rule 83.1(G) but applicable to criminal proceedings, should be interpreted as prohibiting lawyers from engaging in "only speech that is

substantially likely to materially prejudice ongoing criminal proceedings." *United States v. Wecht*, 484 F.3d 194, 205 (3d Cir. 2007). The *Wecht* decision overruled the "reasonable likelihood" standard set forth in Local Rule 83.1(A) as applied to criminal cases and, as this Court previously noted, the Local Civil Rule is currently being revised so that it comports with the "substantially likely" standard.[3] However, neither the *Wecht* decision nor the proposed Local Rule alter the substance of the remaining portions of the current version. Pertinent to the instant matter, Local

---

[3]

As this Court noted in an earlier Memorandum Order, (*see* Docket No. 79 at 4 n.2), Local Rule 83.1(G) is currently being revised. Proposed Local Rule 83.1 provides:

LCvR 83.1 FREE PRESS -- FAIR TRIAL PROVISIONS

A. Release of Information in Civil Actions. A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, that a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such extrajudicial statement would materially prejudice such civil action and relates to:

> 1. evidence regarding the occurrence or transaction involved;

> 2. the character, credibility, or criminal record of a party, witness, or prospective witness;

> 3. the performance or results of any examinations or tests or the refusal or failure of a party to submit to such;

> 4. his or her opinion as to the merits of the claims or defenses of a party except as required by law or administrative rule; or

> 5. any other matter substantially likely to materially prejudice such civil action.

Proposed Local Rule 83.1(A), *available at:* http://www.pawd.uscourts.gov/Documents/Forms /Proposed%20Amended%20Local%20Rules%206%2012%2008.pdf (last visited 3/10/09).

Rule 83.1(G) regulates extrajudicial communications related to a case made by a lawyer and/or a law firm. *See* W.D.Pa.LR. 83.1(G). As drafted, the Local Rule simply does not prohibit extrajudicial communications made by a lawyer's client during pending litigation, such as Defendant in this matter. *Id*. Accordingly, to the extent that Plaintiffs seek sanctions against Defendant itself for alleged violations of Local Rule 83.1(G), including leave to depose Defendant's Director of Communications Heather Browne, said motion is denied.

Turning to the allegations made against defense counsel, it is well settled that an attorney's right to free speech is protected by the First Amendment. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1054 (1991). However, this right to free speech may be limited by disciplinary rules under appropriate circumstances. *United States v. Scarfo*, 263 F.3d 80, 93 (3d Cir. 2001).

In their motion, Plaintiffs argue that it "appears" that defense counsel "participate[d] in making an extrajudicial statement" in violation of Local Rule 83.1(G) because the press releases cite to documents that have been filed under seal in this action. (Docket No. 98). Importantly, Plaintiffs have not produced any actual evidence of counsel's participation in the dissemination of the press releases, although they have requested the opportunity to discover such evidence, by way of deposition of Ms. Browne and sworn testimony of attorneys Luciana, Hamrock, Russel and Wickard before the Court. (*Id*.). In response to Plaintiffs' arguments, Attorney Luciana, as an officer of the Court, represented at oral argument that he was not involved in the production of the press releases. (Docket No. 108). To this point, Mr. Luciana's co-counsel have not represented the same.[4]

---

[4]

While all counsel have not represented to the Court that they were not involved in the dissemination of the press releases, the Court assumes that had an attorney reviewed the press releases, they would have properly advised Defendant to qualify any statements regarding Staff Sergeant Maseth with reference to this litigation. Had Defendant sought advice from its attorneys,

Even if Plaintiffs were able to prove that defense counsel were involved in the dissemination of the press releases, the sanctions requested by Plaintiffs are not appropriate under the circumstances alleged here. Accordingly, this Court need not conduct further inquiry into the allegations by permitting the examination of defense counsel. The Court so finds for the following reasons.

First, the current stage of these proceedings weighs against this Court finding a violation of Local Rule 83.1(G). "A lawyer's right to free speech in a pending case may be circumscribed in the courtroom and is limited outside the courtroom as well." *Scarfo*, 263 F.3d at 93 (citing *Gentile*, 501 U.S. at 1073). However, "[a]ny limitation on the attorney's speech must be narrow and necessary, carefully aimed at comments likely to influence the trial or judicial determination." *Id.* (citing *Gentile*, 501 U.S. at 1075); *see also Wecht*, 484 F.3d 194, 205 (quoting *Gentile*, 501 U.S. at 1075)("limitations on attorney speech 'are aimed at two principal evils: (1) comments that are likely

_____

they would have then consulted the Local Rules, the Pennsylvania Rules of Professional Conduct and any Informal Ethics Opinions issued in explanation thereof, prior to the issuance of the press releases and presumably avoided the need to defend this motion. *See* PA Eth. Op. 2005-185, 2005 WL 4722302 (Pa.Bar.Assn.Comm. Leg.Eth.Prof.Resp. Dec. 20, 2005).

The Court further notes that if Defendant did seek advice of counsel in this instance, that Plaintiffs' motion to compel defense counsel to testify as to the communications made pursuant to said consultation may implicate the attorney-client privilege. *See United States v. Doe*, 429 F.3d 450, 452-53 (3d Cir. 2005)("[t]he attorney-client privilege is a well-established historic rule which protects confidential communications between client and attorney. The privilege belongs to the client, not the attorney."). Likewise, any documents containing counsel's impressions of the same may be protected under the work product doctrine. FED.R.CIV.P. 23(b)(3)("a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). *See also Nesselrotte v. Allegheny Energy, Inc.*, Civ. A. No. 06-1390, 2008 WL 2858401, at *4 (W.D.Pa. July 22, 2008)(generally discussing the attorney-client privilege and work product doctrine).

to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found.'").  This Court previously held that statements made by Plaintiffs' counsel, Mr. Cavanaugh directly to the media at the outset of this case were not violative of Local Rule 83.1(G) and did not warrant this Court's inclusion of a provision adopting Local Rule 83.1(G) as part of the Confidentiality and Protective Order that has been issued in this case. (Docket No. 79 at 6).  This case remains in pretrial proceedings as Plaintiffs' claims are subject to a pending motion to dismiss,[5] and no trial date has been set.  (*See* Docket No. 18).  Accordingly, this Court finds that the statements in the press releases do not have a "substantial likelihood of materially prejudicing" this proceeding or a "reasonable likelihood" that their dissemination "will interfere with a fair trial." *See* W.D.Pa.LR.  83.1(G).

Second, even if Plaintiffs' allegations of defense counsel's involvement in the extrajudicial comments were to be proven as fact, such conduct *may* fall within a recognized exception to the Pennsylvania Rules of Professional Conduct as promulgated by the Supreme Court of Pennsylvania.[6] The Pennsylvania Rules of Professional Conduct have been adopted by this Court. *See* W.D.Pa.LR. 83.3.1(B).  Therefore, any allegations regarding an attorney's conduct under Local Rule 83.1(G) must be read in conjunction with Rule 3.6 of the Rules of Professional Conduct.  Rule 3.6(a) generally prevents a lawyer from making extrajudicial statements "that the lawyer knows or

---

[5]

The Court has previously ordered that the parties conduct limited discovery related to the facts and issues set forth in Defendant's motion to dismiss.  (Docket No. 81).

[6]

The Supreme Court of Pennsylvania governs the practice of law in this Commonwealth.  *See Beyers v. Richmond*, 594 Pa. 654, 937 A.2d 1082, 1089 (Pa. 2007) (holding that the Pennsylvania Supreme Court is authorized by Article V, Section 10(c) of the Pennsylvania Constitution to govern the conduct of attorneys practicing law in the Commonwealth).

reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." Rules of Prof. Conduct, Rule 3.6(a) , 42 Pa.C.S.A. However, an exception to this general rule is set forth in Rule 3.6(c), which provides that:

> (c) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Rules of Prof. Conduct, Rule 3.6(c), 42 Pa.C.S.A. The comments to Rule 3.6 further explain that:

> [7] Finally, extrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party, another party's lawyer, or third persons, where a reasonable lawyer would believe a public response is required in order to avoid prejudice to the lawyer's client. When prejudicial statements have been publicly made by others, responsive statements may have the salutary effect of lessening any resulting adverse impact on the adjudicative proceeding. Such responsive statements should be limited to contain only such information as is necessary to mitigate undue prejudice created by the statements made by others.

*Id*. at cmt. 7. It is undisputed that Defendant has been the subject of recent negative publicity by third persons, including members of Congress and the media regarding its services provided to the Army as a government contractor. (*See* Docket No. 107). It is also apparent that this publicity has not been initiated by Defendant or its counsel.[7] Therefore, the recent negative publicity may be a sufficient basis for counsel to make an extrajudicial statement in mitigation as set forth in Rule

---

[7] This Court offers no opinion as to Defendant's allegations that any of the factual inaccuracies reported in the media were initiated by Plaintiffs or their counsel.

3.6(c).[8]

Third, Plaintiffs do not seek sanctions against defense counsel, which would be appropriate for a violation of Local Rule 83.1(G) governing the conduct of counsel, but instead seek discovery related to the dissemination of the press releases. (Docket No. 98). These discovery requests are outside the scope of the limited discovery that has been ordered by the Court in this case. (Docket No. 81). Moreover, to the extent that said discovery requests could be considered relevant to the pending motion to dismiss, many of the documents sought are also the subject of Plaintiffs' motion to compel (Docket No. 95), which was denied by this Court for failure of Plaintiffs to abide by Local Rule 37.1 (Docket No. 115).[9]

Fourth, the press releases' references to the Jana Weston declaration and "Internal KBR Sources" do not violate the Confidentiality and Protective Order issued in this case nor warrant an Order of Court vacating the same. (*See* Docket No. 91). To the extent that the Jana Weston declaration was marked as "Confidential Information" by Defendant, paragraph 22 of the Confidentiality and Protective Order expressly provides that "[t]his Order shall not restrict the right of [Defendant] to publish, disseminate, or otherwise use or release any Confidential Information that

---

[8]

This Court recognizes that the parties contest whether Defendant had any involvement with the electrocution deaths of Staff Sergeant Maseth or any other soldiers serving in Iraq and Afghanistan, as well as the accuracy of the media's characterization of the same. However, given the present stage of this litigation and based on the current record, this Court is not in a position to issue any clear ruling as to the accuracy of the facts that have been reported in the media. This Court merely concludes that if defense counsel's involvement with the dissemination of the press releases was proven, they may have an arguable defense under Rule 3.6(c) to Plaintiffs' claims in this motion.

[9]

Subsequently, Plaintiffs' and Defendant's counsel have met and conferred regarding said motion and have arrived at agreement on some of their discovery disputes. (Docket No. 116).

... it has produced or designated." (Docket No. 91 at ¶ 22). Therefore, Defendant is not restricted by the Confidentiality and Protective Order from disseminating information that it has designated as Confidential Information. (*Id.*). In addition, the reference to "Internal KBR Sources" at footnote 5 of the press release qualifies the following statement "[f]or all other incidents---17 out of 18 of the electrocutions---there is no evidence that KBR had any relevant maintenance responsibility or involvement." (Docket No. 98-3 at 2). As a result, Defendant merely stated in the press release that it relied on internal KBR sources to provide the information contained therein related to 17 of the electrocution incidents, or all of the incidents except that involving Staff Sergeant Maseth. Hence, the disclosure by Defendant did not violate the Confidentiality and Protective Order, as it did not relate to this litigation.

As Plaintiffs have failed to demonstrate that the requested sanctions are warranted under the circumstances presented to the Court, this Court will not permit Plaintiffs to engage in discovery to determine counsel's involvement, if any, with the dissemination of the press releases in question.

IV.    CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Sanctions [98] is DENIED. An appropriate Order follows.


                                         *s/ Nora Barry Fischer*
                                         Nora Barry Fischer
                                         United States District Judge


Dated: March 11, 2009

cc/ecf: All Counsel of Record.