# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL A. HARRIS, Co-Administratix )
of the Estate of RYAN D. MASETH, )
deceased, and DOUGLAS MASETH, )
Co-Administrator of the Estate of RYAN )
D. MASETH, deceased, )
                                            )
        Plaintiffs, )
                                             )
        v. )      Civil Action No. 08-563
                                             )      Judge Nora Barry Fischer
KELLOGG, BROWN & ROOT )
SERVICES, INC., )
                                             )
        Defendant. )

## MEMORANDUM OPINION

### I.  INTRODUCTION

In this Memorandum Opinion, the Court addresses the narrow question of whether Iraqi

law should be applied to certain of Plaintiffs Cheryl Harris and Douglas Maseth's ("Plaintiffs")

claims in this case, as requested by Defendant Kellogg, Brown & Root Services, Inc. ("KBR").

KBR's motion for the application of Iraqi law has been fully briefed and the Court has

entertained oral argument from counsel. (Docket Nos. 215, 216, 218, 221, 229, 231). The

parties have also supplied the Court with evidence of the potentially applicable Iraqi law; KBR

has presented an expert report and a supplemental expert report describing Iraqi law under the

Iraqi Civil Code while Plaintiffs have submitted Coalition Provisional Authority 17, an Order

which governed United States-Iraqi relations for a period starting in late 2003 until 2008.

(Docket Nos. 216-1, 218, 221-1). Upon consideration of the parties' submissions and arguments,

KBR's motion to apply Iraqi law is DENIED.

1

## II. BACKGROUND

### A. Brief Factual Summary

Plaintiffs Cheryl Harris and Doug Maseth are the parents of Staff Sergeant Ryan Maseth and administratrix and administrator, respectively, of his estate. (Docket No. 209). Both are domiciled in Pennsylvania. (*Id*. at ¶¶ 1-2). Staff Sergeant Maseth's estate is being administered in the state of Tennessee, where he had purchased a home shortly before commencing his second tour in Iraq. Defendant is a domiciliary of Texas, where its principal place of business is located, and Delaware, where it is incorporated. (*Id*. at ¶ 3). Plaintiffs allege that KBR's negligent conduct caused injuries to Staff Sergeant Maseth and his death in Iraq, resulting in damages. (*Id*. at ¶¶ 11-30). Plaintiffs also allege that KBR's negligent conduct caused them damages in Pennsylvania, including that:

> b. They have been denied and have forever lost the services, assistance, guidance, counseling, companionship, and society of SSG Maseth;
>
> c. They have been and will forever be deprived of the financial support and pecuniary benefits which they would have received from SSG Maseth;

(*Id*. at ¶ 31).

At the time of his death, Staff Sergeant Maseth was serving his second tour in Iraq as an "active duty Army Ranger and Green Beret, serving in the 5th Special Forces Group (Airborne) of the United States Army." (*Id*. at ¶ 6). Staff Sergeant Maseth was housed at a building known as LSF-B1. (*Id*. at ¶ 11). KBR provided operations and maintenance services to the RPC and LSF-B1 pursuant to the LOGCAP III contract with the United States Army. (*Id*. at ¶¶ 8-10).

The parties do not dispute that, on January 2, 2008, Staff Sergeant Maseth was electrocuted while showering in his living quarters in building LSF-B1 at the RPC. *Harris v.*

2

*Kellogg, Brown & Root Services, Inc.*, 618 F.Supp.2d 400, 414 (W.D.Pa. 2009). Staff Sergeant Maseth's exposure to electric current caused him to suffer cardiac arrest, which resulted in his death. *Id.* The source of the electric current was determined to be a water pump located on the roof of LSF-B1. *Id.* at 414-15.

Plaintiffs allege that KBR's negligence in performing its operations and maintenance services, particularly, its negligent performance or non-performance of electrical maintenance services at LSF-B1, including same as to the malfunctioning water pump, was the proximate cause of Staff Sergeant Maseth's death. (Docket No. 209 at ¶¶ 11-30). Plaintiffs' claims sound in negligence and are brought under Pennsylvania's wrongful death and survival statutes. (*Id.* at ¶¶ 32-39). KBR argues that it is not liable to Staff Sergeant Maseth's estate and contends, among other things, that its responsibilities to perform electrical maintenance at the base were limited under the LOGCAP III contract and relevant Task Orders. (Docket No. 217).

### B. Relevant Iraqi Law

#### 1. Iraqi Civil Code

In his expert report, Professor Haider Ala Hamoudi[1] from the University of Pittsburgh School of Law summarizes Iraqi law as set forth in its Civil Code. (Docket No. 216-1). Plaintiffs do not contest his summary of the law set forth in the relevant Iraqi Civil Code sections.[2] (*See* Docket No. 218). The Court now turns to his summation.

---

[1]    Professor Hamoudi holds a J.D. and doctorate from the Columbia University School of Law. (Docket No. 216-1 at ¶ 4). He is presently an assistant professor of law at the University of Pittsburgh School of Law, a position he has held since 2007. (*Id.* at ¶ 1). Professor Haumoudi previously held an associate professorship position at Columbia University School of Law starting in 2005. (*Id.* at ¶ 3). He also worked for two years (from 2003-2005) in Iraqi law schools. (*Id.*). In 2009, he advised a committee which was tasked by the Iraqi legislature with drafting amendments to the Iraqi constitution. (*Id.* at ¶ 2). Professor Hamoudi has conducted significant research regarding Middle Eastern law, including Iraqi and Islamic law and published numerous articles regarding same. (*Id.* at ¶ 4). Plaintiffs have not contested that Professor Hamoudi is properly qualified as an expert in Iraqi law.

[2]    As discussed *infra*, Plaintiffs do challenge whether the proffered provisions of the Iraqi Civil Code should

If applicable, Professor Hamoudi posits that Plaintiffs' common law tort claims would arise under the Iraqi Civil Code articles governing "wrongful actions." (Docket No. 216-1 at ¶¶ 17-19). Article 202 provides that "harmful acts to the person, including killing, wounding, assault or any other type of infliction of injury, may entitle the victim to compensation." (*Id*. at ¶ 19). "Article 203 indicates that in the case of killing, or in the case of death by reason of wounds or any other harmful act, the perpetrator may be responsible for compensating those who 'have become impoverished and have been deprived of sustenance because of the killing or death.'" (*Id*.). "Article 204 is then the catch-all provision, indicating that 'any transgression that results in the injury of another beyond that which was mentioned in the previous Articles is covered by compensation.'" (*Id*.). Three elements must be established to recover under Articles 202, 203 or 204: (1) fault, i.e., intentional conduct or negligence by the actor; (2) harm, including material harm, i.e., a realized loss of a financial interest by the victim and moral harm, i.e., harm to reputation or honor, emotional distress or pain and suffering damages; and (3) causation between the fault and the harm suffered. (*Id*. at ¶ 20).

Professor Hamoudi highlights the limitations of "causation" under the Iraqi Code. He quotes Article 211, as follows:

> If a person determines that harm arises from a foreign cause which he had no hand in, like an act of heaven, an event of surprise, *force majeure*, the act of another, or the fault of the victim, then he is not liable if there is no agreement to the contrary concerning this.

(*Id*. at ¶ 35). Under Iraqi law, joint and several liability may apply to harm caused by multiple actors, subject to exceptions. (*Id*.). As described by Professor Hamoudi, "one party is released from liability to the extent that the harm caused by the wrongful act of another, whether

---

be applied in this case. They argue that Order 17 governs this case, which dictates that the laws of the United States of America, or the interested states, should apply.

subsequent or precedent, 'drowns out' the first party's wrongful act." (*Id*. at ¶ 36). Under the "drowning out" exception, an intentional act will "drown out" the negligent act and the negligent party will not be held responsible. Also, a negligent party will not be responsible if "one of the causes is the result of the other" or, stated differently, "where there are two negligent acts, one built upon and the product of another, the second negligent act is 'drowned out' by the first, and is no longer considered a cause of harm." (*Id*. at ¶¶ 38-40).

Article 205(2)-(3) provides that:

> (2) The wife and the family relatives have the right to compensation for the moral harm inflicted upon them by virtue of the death of the victim.
>
> (3) Compensation for moral harm does not extend to anyone else except when the amount has been established by agreement or by judicial ruling.

(*Id*. at ¶ 41). According to Professor Hamoudi, leading commentators agree that these sections "preclude the possibility of moral harm recovery on the part of a decedent victim as opposed to his family members." (*Id*. at ¶ 42). In addition, "compensation for material harm that has befallen a decedent victim, such as hospital or funeral expenses, is recoverable under Iraqi law, but compensation for moral harm such as pain and suffering or emotional distress *on the part of the decedent* (as opposed to his family members), is not." (*Id*. at ¶ 44). Under Iraqi law, the decedent's claim for moral harm remains inchoate at the time of his death and the right to recovery cannot be transferred to another person unless it is first determined by agreement or final judicial ruling. (*Id*. at ¶ 42). Among the reasons for this legal principle is that there are no estates under Iraqi law and the intestacy rules permit only a dividing of property amongst one's heirs at the time of his death. (*Id*.).

Professor Hamoudi also submits that there is no provision in the Iraqi Civil Code which authorizes an award of punitive damages. Instead, Article 207 of the Civil Code provides that:

> (1) The court shall measure the compensation in all instances to the amount that represents the harm suffered by the victim and what he has lost in earnings, provided that this is a natural result of the wrongful act.
>
> (2) Taken into account in the measurement is the prevention from the benefits of things and may include guarantees of wages.

Under Iraqi law, "the purpose of a civil trial cannot involve punishment or deterrence in any form." (*Id*. at ¶ 50). Thus, he opines, consistent with leading commentators on Iraqi law, that compensation available under the Iraqi Civil system is solely for harm suffered and punitive damages are unavailable. (*Id*. at ¶ 49). The reasons for this rule are that punishment for a wrong is "solely within the ambit of the Penal Code and the criminal courts responsible for interpreting and applying it," while the civil system is meant to compensate victims, only. (*Id*. at ¶ 56). This policy is furthered by a number of procedural rules which essentially stay a civil proceeding in the wake of a criminal case arising out of the same facts. (*Id*.). Moreover, if there is a finding of guilt, that finding remains binding in the civil courts. (*Id*.).

## 2. Coalition Provisional Authority Order Number 17

Following the American invasion of Iraq in March of 2003, a Coalition Provisional Authority was placed in power to govern the country. On June 28, 2004, sovereignty was transferred to the Iraqi Interim Government, and on January 30, 2005, the same date elections were held to choose representatives for the newly formed Iraqi National Assembly, power was transferred to the Iraqi Transitional Government. On April 7, 2005, the Assembly chose Jalal Talabani as President of State. The Constitution of Iraq was ratified on October 15, 2005, and the permanent Iraqi government was installed on May 20, 2006. Yet throughout these incremental changes in power from Saddam's Ba'athist regime to the current government, Iraq has maintained its status as a state, or nation. Its

territorial integrity is intact, and those who were citizens of Iraq
before the 2003 invasion are still citizens of Iraq. There has been
no discontinuity of statehood.

*Kalasho v. Republic of Iraq*, 2007 WL 2683553, at \*6 (E.D.Mich., Sept. 7, 2007).

Coalition Provisional Authority Order Number 17 ("Order 17") "was issued by Paul

Bremer, the head of the Coalition Provisional Authority, during the early days of the U.S.

occupation of Iraq." *Galustian v. Peter*, 591 F.3d 724, 728 (4th Cir. 2010). A revised Order 17

was later issued and the terms of Order 17 remained in place after the transfer of sovereignty to

the Iraqis in 2004. *Id*. Pertinent here, section 4.2 of Order 17 provides that:

> **Contractors shall not be subject to Iraqi laws or regulations in**
> **matters relating to the terms and conditions of their Contracts**,
> including licensing and registering employees, businesses and
> corporations; provided, however, Contractors shall comply with
> such applicable licensing and registration laws and regulations if
> engaging in business or transactions in Iraq other than Contracts.
> Notwithstanding any provisions in this Order, Private Security
> Companies and their employees operating in Iraq must comply
> with all CPA Orders, Regulations, Memoranda, and any
> implementing instructions or regulations governing the existence
> and activities of Private Security Companies in Iraq, including
> registration and licensing of weapons and firearms.

(Docket No. 218-2 at § 4.2) (emphasis added). In addition, section 4.3 of Order

17 states:

> **Contractors shall be immune from Iraqi legal process with**
> **respect to acts performed by them pursuant to the terms and**
> **conditions of a Contract or any sub-contract thereto**. Nothing
> in this provision shall prohibit MNF Personnel from preventing
> acts of serious misconduct by Contractors, or otherwise
> temporarily detaining any Contractors who pose a risk of injury to
> themselves or others, pending expeditious turnover to the
> appropriate authorities of the Sending State. In all such
> circumstances, the appropriate senior representative of the
> Contractor's Sending State in Iraq shall be notified.

(Id. at § 4.3) (emphasis added).  Finally, Section 18 provides that:

> Except where immunity has been waived in accordance with
> Section 5 of this Order, **third-party claims including those** for
> property loss or damage and **for personal injury, illness or death**
> or in respect of any other matter **arising from or attributed to**
> **acts or omissions of** CPA, MNF and Foreign Liaison Mission
> Personnel, International Consultants, and **Contractors or any**
> **persons employed by them for activities relating to**
> **performance of their Contracts, whether normally resident in**
> **Iraq or not and that do not arise in connection with military**
> **operations, shall be submitted and dealt with by the Sending**
> **State whose personnel (including the Contractors engaged by**
> **that State), property, activities or other assets are alleged to**
> **have caused the claimed damage, in a manner consistent with**
> **the Sending State's laws, regulations and procedures.**

(Docket No. 218-2 at § 18) (emphases added).

> The United Nations Security Counsel Resolution 1790, which
> gives legal effect to Order 17 immunity, expired on December 31,
> 2008. Effective January 1, 2009, the Status of Forces Agreement
> ("SOFA") now provides that "Iraq shall have the primary right to
> exercise jurisdiction over United States contractors and United
> States contractor employees."

*Galustian v. Peter*, 2010 WL 4608710, at *8, n.17 (E.D.Va. Nov. 9, 2010) (quoting SOFA Art.

12, § 2).

### 3.  Professor Hamoudi's Summation of Order 17

Although he did not address Order 17 in his initial expert report, Professor Hamoudi

admits in his supplemental report that "Iraqi practitioners and legal academics all concede that

CPA Orders are a valid part of Iraqi law unless repealed."  (Docket No. 220-1 at ¶ 2).  However,

he claims that CPA Orders are "often ignored" by Iraqi courts because these provisions were

drafted by "non-Iraqi lawyers with little or no knowledge of the Iraqi legal system."  (*Id.*).

Professor Hamoudi opines that the language of sections 4.2 and 4.3 of Order 17 suggests that

8

these provisions were not drafted in a manner consistent with Iraqi law under its Civil Code. (*Id.* at ¶¶ 3-5). He posits that sections 4.2 and 4.3 of Order 17 apply different legal standards: under section 4.2, Iraqi law may not apply to "matters relating to terms and conditions of a contract"; and, pursuant to section 4.3, "Contractors are immune from Iraqi legal process." (*Id.* at ¶¶ 6-7). Professor Hamoudi makes no reference to section 18 of Order 17 in his Supplemental Expert Report. (*See* Docket No. 220-1). Thus, he has not offered the Court any opinion regarding the proper interpretation of section 18.

### C. Relevant Procedure

On March 31, 2009, this Court denied KBR's motion to dismiss Plaintiffs' claims relying on the political question doctrine and combatant activities exception to the Federal Tort Claims Act, without prejudice. *Harris v. Kellogg, Brown & Root Services, Inc.*, 618 F.Supp.2d 400, 434 (W.D.Pa. 2009). This Court later denied KBR's motion requesting that the Court certify the legal questions presented by these defenses and to authorize the filing of an interlocutory appeal. *Harris*, 2009 WL 1248060 (W.D. Pa. Apr. 30, 2009). Despite the denial of an interlocutory appeal, KBR appealed the Court's March 31, 2009 ruling to the United States Court of Appeals for the Third Circuit on April 30, 2009. (Docket No. 166). The Court of Appeals dismissed KBR's appeal and remanded the case for further proceedings. *Harris*, 618 F.3d 398 (3d Cir. 2010).

On remand, KBR attempted to limit discovery to the defenses it raised in its earlier motion to dismiss, but the Court ordered the parties to commence discovery as to Plaintiffs' claims and KBR's defenses. *Harris*, 2010 WL 4614694 (W.D. Pa. Nov. 5, 2010). However, the Court permitted KBR to bring the present motion while discovery was ongoing. (Docket No.

198).

KBR filed its motion for the application of Iraqi law, brief in support and expert declaration on February 4, 2011.  (Docket Nos. 215, 216).  Plaintiffs responded by filing a brief in opposition and exhibits on February 21, 2011.  (Docket No. 218).  After receiving leave of court, KBR filed its reply brief and a supplemental expert declaration on March 10, 2011.  (Docket No. 221).  The Court heard oral argument from counsel during a motion hearing on April 5, 2011.  Subsequent to the argument, the parties submitted supplemental briefing; KBR filed its supplemental brief on April 27, 2011 while Plaintiffs filed their supplemental brief on May 5, 2011.  (Docket Nos. 229, 231).  Because the Court has heard oral argument and reviewed all of the parties' submissions, KBR's motion is now ripe for disposition.

## III. DISCUSSION

### A. Rule 44.1 Analysis

In its motion for the application of Iraqi law, KBR has requested that this Court apply the laws of a foreign country to Plaintiffs' claims in his case.  (Docket Nos. 215, 216).  To this end, Rule 44.1 of the Federal Rules of Civil Procedure provides that:

> A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1.  "[T]he parties … generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case."  *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435,

440 (3d Cir. 1999). "Where parties fail to satisfy either burden the court will ordinarily apply the forum's law." *Id*. at 441. Thus, Rule 44.1 imposes no obligation on this Court to determine foreign law on its own accord, but this Court also possesses "broad authority to conduct [its] own independent research to determine foreign law." *Id*. at 440. Here, KBR asserts that Iraqi law should be applied and, thus, bears the burden to supply the Court with appropriate Iraqi law, and to persuade the Court that it governs this case.

The threshold issue raised by the parties is whether the provisions of the Iraqi Civil Code are potentially applicable to this case as KBR suggests or if Plaintiffs' view that Order 17 supplants the provisions of the Iraqi Civil Code in favor of the laws of the United States of America or one of its States should be adopted. (Docket Nos. 216, 218, 221). As discussed above, KBR has supplied the Court with an expert report from Professor Hamoudi summarizing the potentially relevant provisions of the Iraqi Civil Code. (Docket No. 216-1). Plaintiffs do not quarrel with his summary; instead, they argue that the provisions of Order 17 should govern. Specifically, section 18 of Order 17 provides that:

> Except where immunity has been waived in accordance with Section 5 of this Order, **third-party claims including those** for property loss or damage and **for personal injury, illness or death** or in respect of any other matter **arising from or attributed to acts or omissions of** CPA, MNF and Foreign Liaison Mission Personnel, International Consultants, and **Contractors or any persons employed by them for activities relating to performance of their Contracts, whether normally resident in Iraq or not and that do not arise in connection with military operations, shall be submitted and dealt with by the Sending State whose personnel (including the Contractors engaged by that State), property, activities or other assets are alleged to have caused the claimed damage, in a manner consistent with the Sending State's laws, regulations and procedures.**

(Docket No. 218-2 at § 18) (emphases added). They also point to sections 4.2 and 4.3 of Order

17 for further support of their position.

Professor Hamoudi's initial report made no reference to Order 17.  (*See* Docket No. 216-1).  However, in his supplemental report, he admitted that Order 17 was a "valid part of Iraqi law unless repealed" and that the CPA was not repealed until November 17, 2008, eleven months after Staff Sergeant Maseth's death, which is the subject of this lawsuit. (Docket No. 220-1 at ¶¶ 1, 8).  He further acknowledged that section 4.2 provides that government contractors are not subject to Iraqi laws regarding the terms and conditions of their contracts and that government contractors are immune from Iraqi legal process pursuant to section 4.3.  (*Id.*).  Therefore, despite the apparent consensus that Order 17 was incorporated into Iraqi law and applied to government contractors, Defendant's Iraqi law expert only addressed same in response to the Plaintiffs' arguments.  In addition, Professor Hamoudi's supplemental expert report ignores section 18, despite the fact that Plaintiffs relied on that section in their opposition.  (*See* Docket Nos. 220-1; 218).  Hence, the Court questions the credibility of the defense expert, given the lack of any reference to Order 17 in his initial report and the lack of completeness in his supplemental report.  *See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 268 (3d Cir. 2000) (holding that under Rule 44.1 "the District Court is in the best position to determine what at this point is essentially a credibility issue—i.e., which expert to believe.").

As Professor Hamoudi did not address section 18, the Court is left with only legal argument from the parties regarding the proper interpretation of that provision.  While they each cite a number of cases which have tangentially addressed the applicability of Order 17 and/or Iraqi law to tort cases brought against government contractors, none of them are binding on this Court and none contain any analysis of section 18.  The decision relied upon by Plaintiffs,

*Dalkilic v. Titan Corp.*, 516 F.Supp.2d 1177, 1192 (S.D. Cal. Aug. 29, 2007), merely noted that the parties in that case and their experts agreed that California law applied because Order 17 immunity dictated such a result. On the other hand, the decisions advanced by KBR which have mentioned that Iraqi law may apply or held that Iraqi law applied to the case before it, *Baragona v. Kuwait Gulf Link Transport Co*, 691 F.Supp.2d 1346 (N.D.Ga. 2007), *vacated on other grounds*, 691 F. Supp. 2d 1351 (N.D. Ga. 2009) and *Al Quraishi v. Nakhla*, 728 F.Supp.2d 702 (D.Md. 2010), are distinguishable because those courts were not located in Pennsylvania and did not apply Pennsylvania's choice of law rules. Those jurisdictions, Maryland and Georgia, apply the principle of *lex loci delicti* or the law of the place of the wrong. *Baragona*, 691 F.Supp.2d 1346; *Al-Quraishi*, 728 F.Supp.2d at 702. As Plaintiffs point out, and as discussed below, Pennsylvania no longer strictly adheres to this legal principle.[3] In addition, the majority decision in *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009) cannot reasonably be read to suggest anything more than the Court of Appeals commented that Iraqi tort law may apply to the facts in that case. In fact, Circuit Judge Garland noted in his dissent that the issue of the application of Iraqi law was not raised before the district court and that the holding of the majority was overbroad and did not contemplate the interests that states connected to that litigation could have in applying generally applicable tort law to the case. *Saleh*, 580 F.3d at 30-31, n. 20, 22.

Aside from these decisions, KBR's primary argument against the application of Order 17 is that KBR's services provided to the Army in Iraq "arise in connection with military operations" and, thus, section 18 of Order 17 does not apply. This Court rejects such a broad interpretation of section 18, which ignores the preceding clause of the provision. *See Abbott v. Abbott*, 130 S.Ct. 1983, 1990 (2010) (quoting *Medellín v. Texas*, 552 U.S. 491, 506, 128 S.Ct.

---

3      *See* §III.B.2, *infra.*

1346, 170 L.Ed.2d 190 (2008)) ("The interpretation of a treaty, like the interpretation of a statute, begins with its text.").   Again, section 18 provides that the sending state's laws apply to third party personal injury claims, including those resulting in death, from acts or omissions of the Contractor "for activities relating to performance of their Contracts … and that do not arise in connection with military operations."  CPA Order 17, § 18.  The reason for the enactment of Order 17 was to provide some governance of the Coalition Provisional Authority, a transitional government put in place after the United States' invasion of Iraq and continued military operation there.  *Kalasho*, 2007 WL 2683553, at *6.  The Contracts entered into with government contractors referenced in this Order (which would include the LOGCAP III Contract under which KBR operated in Iraq) all necessarily supported this mission.  Considering this background, the adoption of KBR's interpretation, i.e., that the instant case "arises in connection with military operations" because its contract supported the military base, would encompass virtually all claims, rendering the language concerning "for activities relating to performance of their Contracts" under section 18 superfluous.[4]  *See Iwanowa v. Ford Motor Co.*, 67 F.Supp.2d

---

[4]     The Court notes that this interpretation is consistent with the Court's prior ruling denying KBR's initial motion to dismiss relying on the combatant activities exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(j). To this end, the Court previously held that:

> [t]his case does not involve claims arising from active military combat operations. The issues presented by Plaintiffs' claims involve the alleged negligent performance or non-performance of KBR in providing maintenance services to the United States Army. In addition, KBR has not presented the Court with any evidence or allegations that Staff Sergeant Maseth's death was caused by active military operations. Therefore, Plaintiffs' claims do not arise out of "the combatant activities of the military" under 28 U.S.C. § 2680(j).

*Harris,* 618 F.Supp.2d at 434.  The Court understands that recently the district court in *Aiello v. Kellogg, Brown & Root Services, Inc.*, 751 F.Supp.2d 698, 712-15 (S.D.N.Y. Mar. 31, 2011), disagreed with this Court's analysis. Although KBR contends that this Court should revisit its earlier holding at this time, the Court has repeatedly held that its prior arguments were dismissed without prejudice, and may be raised again, at the close of discovery.  *See Harris*, 2010 WL 4614694 (W.D.Pa. Nov. 5, 2010).  And, despite the decision in *Aiello*, which is non-binding, the caselaw surrounding tort law claims against government contractors supporting military operations overseas remains unsettled.

424, 458 (D.N.J.,1999) ("It is a cardinal principle of construction that courts shall interpret contracts, including treaties, so as to give meaning to each provision rather than rendering some provisions, or portions thereof, superfluous.") (citing *Sullivan v. Kidd*, 254 U.S. 433, 439, 41 S.Ct. 158, 65 L.Ed. 344 (1921) ("all parts of a treaty are to receive a reasonable construction, with a view to giving a fair operation to the whole."); *De Geofroy v. Riggs*, 133 U.S. 258, 270, 10 S.Ct. 295 (1890) ("It is a rule, in construing treaties as well as laws, to give a sensible meaning to all their provisions, if that be practicable.")).

In sum, given KBR's admissions, through Hamoudi, that Order 17 precluded claims against contractors related to their contracts under Iraqi law, and that contractors were immune from suit in Iraqi courts, as well as the Court's interpretation of section 18 of Order 17, KBR has failed to meet its burden to persuade this Court that the recited portions of the Iraqi Civil Code possibly govern this litigation. Accordingly, KBR's motion for the application of Iraqi law is denied. Thus, the law of the forum must apply. *Bel-Ray Co., Inc.*, 181 F.3d at 441.

### B. Choice of Law Analysis

Notwithstanding that the Court has concluded that KBR has failed to meet its burden under Rule 44.1, and KBR's motion fails on this basis alone, the Court will continue with its analysis of the remainder of the parties' arguments. In so doing, the Court must first determine whether the instant matter is controlled by the federal statute relied upon by KBR, 16 U.S.C. § 457 or Pennsylvania choice of law rules, as are generally applied in choice of law disputes by a district court sitting in Pennsylvania. *See Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 224-225 (3d Cir. 1991) (analyzing whether a federal law, the Fair Labor Standards Act, or common law choice of law standards governed dispute).

1.  <u>Applicability of 16 U.S.C. § 457</u>

KBR argues, in part, that the Court should apply Iraqi law to Plaintiffs' claims in this

case based on its interpretation of the doctrine of federal enclave jurisdiction as codified at 16

U.S.C. § 457. (Docket No. 229). KBR reasons that section 457 requires courts to apply the law

of the surrounding state in negligence or wrongful death cases which occur within a place subject

to the exclusive jurisdiction of the United States. (*Id.*). KBR maintains that the United States

had exclusive control of the military base where the alleged negligent activities occurred and

because the base was located within Iraq, section 457 dictates that Iraqi law should apply. (*Id.*).

Plaintiffs disagree, arguing that "State" as used in the statute is limited to one of the 50 United

States rather than a foreign country such as Iraq. (Docket No. 231).

The Court turns to section 457, which provides that:

> In the case of the death of any person by the neglect or wrongful
> act of another within a national park or other place subject to the
> exclusive jurisdiction of the United States, within the exterior
> boundaries of any State, such right of action shall exist as though
> the place were under the jurisdiction of the State within whose
> exterior boundaries such place may be; and in any action brought
> to recover on account of injuries sustained in any such place the
> rights of the parties shall be governed by the laws of the State
> within the exterior boundaries of which it may be.

16 U.S.C. § 457. The term "State" is undefined in the statute. However, the legislative history

provided by the parties indicates that "State" refers to one of the 50 States in the Union. (*See*

Docket No. 229-3)[5]. This interpretation is consistent with the Constitution, which refers to the

---

[5]    Specifically, in support of the bill, Senator Robinson explains that:

> Practically every state now has given a right of action to the legal representative
> of the dependent relatives of one who has suffered a death by reason of the
> neglect or wrongful act of another, there being no such recovery, it will be
> recalled, at common law.

"States" in a similar capitalized fashion throughout. *See e.g.,* U.S.Const. art. IV, § 1, sect 1

("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial

Proceedings of every other State"); U.S.Const. art. IV, § 2, cl 1 ("The Citizens of each State shall

be entitled to all Privileges and Immunities in the several States."); U.S.Const. art. IV, § 3, cl. 1

("New States may be admitted by the Congress into this Union; but no new State shall be formed

or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of

two or more States, or Parts of States, without the Consent of the Legislatures of the States

concerned as well as of the Congress."). In addition, courts have strictly construed the term

"State" under section 457, reasoning that the District of Columbia is not a "State" under section

457. *See Watson v. Manhattan and Bronx Surface Transit Operating Authority*, 487 F.Supp.

1273, 1276 (D.C.N.J. Apr. 17, 1980).[6]

    In light of the foregoing, the Court concludes that "State" as used in 16 U.S.C. § 457 does

not refer to a nation-state or foreign country such as Iraq. Therefore, section 457 is not

---

        There are a great many places in the United States under the exclusive
jurisdiction of the United States—the national parks, for instance. If a death
should occur within those places, within the exclusive jurisdiction of the United
States, there would be no right of recovery on the part of the representatives or
dependents of the person who thus suffered death as a result of the wrongful act
or neglect of another.

(Docket No. 229-3).

[6]     In so holding, the *Watson* court noted that "the District of Columbia is the 'seat of government', over which
the Congress exercises exclusive jurisdiction by virtue of U.S.Const. art. I, sec. 8, cl. 17." *Watson*, 487 F.Supp. at
1276. KBR relies upon *Kelly v. Lockheed Martin Services Group*, 25 F.Supp.2d 1 (D.P.R. Aug. 31, 1998) in
support of its position that "State" has broader implications. *Kelly* recognized that a specific area of Puerto Rico
was a "federal enclave" because, among other things, the United States had purchased the land wherein the tort
occurred directly from Puerto Rico. The *Kelly* court, however, did not address the question of whether Puerto Rico
was a "State" under section 457. *Id.* Of course, the Commonwealth of Puerto Rico is not a state; it is a United
States territory. *See Igartua v. United States*, 626 F.3d 592 (1st Cir. 2010). The distinction between the two cases,
i.e., why the District of Columbia is not considered a "State" but Puerto Rico is, is not central to this Court's holding
and need not be resolved here. It is enough that Iraq is a foreign country and KBR has offered this Court no
authority supporting its position that section 457 applies to a military base located in a foreign country. *See also* n.
7, *infra*.

controlling. Accordingly, KBR's motion for the application of Iraqi law is denied to the extent that it relies on said statute.[7]

## 2. Pennsylvania Choice of Law Rules

Having concluded that section 457 does not govern, the Court must turn to a traditional choice of law analysis. In determining which jurisdiction's laws to apply to Plaintiffs' wrongful death and survival claims, this Court applies Pennsylvania's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In the past, Pennsylvania adhered to the principle of *lex loci delicti*, and applied the law of the place of the wrong in tort cases. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (Pa. 1964). However, Pennsylvania has long since abandoned this approach. *Id*. Instead, Pennsylvania conflicts law has combined a "governmental interest analysis" with the Restatement (Second) of Conflicts theory, thereby adopting a "hybrid" approach. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir.2007) (citing *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir.1978) and *Griffith,* 416 Pa. 1).

This approach requires the Court to first determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, i.e., whether there is a conflict. *Hammersmith*, 480 F.3d at 230. If their respective laws are the same, there is no conflict at all

---

[7]     The parties also debate whether the military base in Iraq is a "federal enclave", subject to the exclusive jurisdiction of the United States. The term "federal enclave" originates in the enclave clause in the Constitution. *See* U.S. Const. art. I, § 8, cl 17 ("To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings"). Although the decisions in this area are limited, courts have reasoned that the enclave clause does not apply to a military installation on foreign soil. *See Gavrilovic v. Worldwide Language Resources, Inc.*, 441 F.Supp.2d 163, 177 (D.Me. Jul. 25, 2006) (defamation claim from email originating at military base in Afghanistan); *Nguyen v. Allied Signal, Inc.*, No. C98-03616, 1998 WL 690854, at *1 (N.D.Cal. Sept. 29, 1988) (rejecting defendant's argument that federal enclave doctrine jurisdiction precluded state tort claims arising from plaintiff's exposure to asbestos on military base in Vietnam).

and the choice of law analysis ends; the law of the forum, Pennsylvania law here, would apply. *Id.* If the laws differ, the Court must examine the policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false," or "unprovided for." *Id.*

"A true conflict exists when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied." *Budget Rent-A-Car Sys. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n. 15 (3d Cir.1991)). If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970).

A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *Budget Rent-A-Car*, 407 F.3d at 170. When there is a false conflict, the court must apply the law of the only interested jurisdiction. *Id.* If no jurisdiction's interests would be impaired if its laws were not applied, there is an "unprovided for" conflict and *lex loci delicti* (the law of the place of the wrong) continues to govern. *Budget Rent-A-Car Sys.*, 407 F.3d at 170 (citing *Miller v. Gay*, 323 Pa.Super. 466, 470 A.2d 1353 (1983)).

> [T]he factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971).

> The relevant contacts for a tort are enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)-(d), and include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."

*Taylor v. Mooney Aircraft Corp.*, 265 Fed.Appx. 87, 91 (3d Cir. 2008).

Our Court of Appeals has reasoned that Pennsylvania choice of law analysis "employs depecage,[8] the principle whereby 'different states' laws may apply to different issues in a single case." *Taylor*, 265 Fed.Appx. at 91 (citing *Berg Chilling*, 435 F.3d at 462; *Broome v. Antlers' Hunting Club*, 595 F.2d 921, 924 (3d Cir. 1979)). Therefore, the Court must separately analyze the law of the potentially interested jurisdictions (i.e., Iraq, Pennsylvania, Tennessee and Texas) regarding each of the disputed legal issues. Those disputed legal issues are: (1) principles of causation; (2) the availability of damages for pain and suffering; and, (3) the availability of punitive damages. The Court will analyze the applicable principles, in turn.

  a. Liability - Causation

  i.  Actual Conflict of Laws

There is an actual conflict of laws between the laws of Iraq, Pennsylvania, Tennessee and Texas as to causation and, more specifically, whether a second negligent actor may be liable if the negligence caused by the first actor would have caused the harm to the plaintiff without the second negligent act.

Under Iraqi law, a second negligent party will not be held responsible if "one of the causes is the result of the other" or, stated differently, "where there are two negligent acts, one

---

[8] "A French word, depecage (DE-PA-SAJ) is defined as a 'cutting up, dismembering, carving up.'" *Taylor*, 265 Fed.Appx. at 92, n.5 (quoting *Kelly v. Ford Motor Co.*, 942 F.Supp. 1044, 1045 n. 2 (E.D.Pa.1996) (citation omitted)).

built upon and the product of another, the second negligent act is 'drowned out' by the first, and is no longer considered a cause of harm." (*Id*. at ¶¶ 38-40).  In his reports, Professor Hamoudi does not provide a precise opinion as to the policy underlying this principle of law.  (*See* Docket No. 216-1).  However, the logical reason for such a policy is to protect the second actor from liability where the harm to the plaintiff would have occurred without any action (or, presumably, inaction) by the second actor.[9]  Assuming this is the stated policy reason for the law; Iraqi law protects subsequent defendants from being subject to damages in such situations but also places the full burden to compensate the plaintiff for the harm caused on the initial negligent actor.

Under Pennsylvania law, a defendant is liable if his negligent conduct was a "factual cause" of the harm to the plaintiff. Pa. SSJI (Civ), §3.15. "Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.  A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm."  *Id*.  However, "[t]o be a factual cause, the defendant's conduct need not be the only factual cause.  The fact that some other causes concur with the negligence of the defendant in producing an injury does not relieve the defendant from liability as long as [his or her] own negligence is a factual cause of the injury." *Id*. In addition,

> [w]here the negligent conduct of a defendant combines with other circumstances and other forces to cause the harm suffered by the plaintiff, the defendant is responsible for the harm if [his or her] negligent conduct was a factual cause of the harm, even if the harm would have occurred without it.

Pa. SSJI (Civ), §3.17.  The explanatory comments note that "[a] defendant cannot escape liability

---

[9]     The Court notes that KBR's failure to provide the Court with any evidence of the policies underlying this aspect of Iraqi law further demonstrates that it has not met its burden to prove Iraqi law under Rule 44.1.  *See* § III.A., *supra*.

where his or her negligent conduct would have brought about the harm by itself simply because another force coincidentally would also have brought about the harm if acting alone." *Id*.

Pennsylvania law also employs a comparative negligence regime whereby a plaintiff is not barred from recovery based on his or her own contributory negligence "where such negligence is not greater than the causal negligence of the defendant or defendants against whom recovery is sought." 42 Pa.C.S. § 7102(a). If multiple defendants are found liable for the harm caused to the plaintiff, they are each held responsible for damages to the extent of their proportional responsibility for the harm caused to the plaintiff. 42 Pa.C.S. § 7102(b). However, they remain jointly and severally liable for the full amount of damages owed to the plaintiff. *Id*. Under this scheme, "[t]he plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery." *Id*. But, "[a]ny defendant who is so compelled to pay more than his percentage may seek contribution" from any other defendants, up to their proportionate amount of the damages. *Id*. The policies underlying Pennsylvania's scheme both as to causation and damages protect plaintiffs to greater ensure that they will receive full recovery of their damages for harm suffered.

"Under Texas law, if a plaintiff has evidence that a defendant's negligence is a proximate cause of an accident, the plaintiff need not make any attempt to rule out other proximate causes of the accident because '[t]here can be more than one proximate cause of an injury, and all persons whose negligent conduct contributed to the injury are responsible for it.'" *Michaels v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000) (quoting *Coleman v. Equitable Real Estate Investment Management, Inc.*, 971 S.W.2d 611 (Tex.App.-Dallas 1998)).

Texas law also has a system of proportionate responsibility under which "a claimant may

not recover damages if his percentage of responsibility is greater than 50 percent," but, if the claimant's responsibility is 50 percent or less, the trier of fact is tasked with determining the percentage of responsibility for the harm among the relevant parties. Tx.Civ.Prac. & Rem. Code §§ 33.001, 33.003. Each defendant is liable only for the percentage of damages equal to the defendant's percentage of responsibility as found by the trier of fact, except that a defendant who is found responsible for greater than 50 percent of the harm is held jointly and severally liable with the other responsible defendants. *Id*. at § 33.013. However, if this defendant pays a judgment in excess of its percentage of responsibility, it can assert a claim for contribution against the other responsible party. *Id*. Like Pennsylvania's causation's laws, Texas law protects plaintiffs to ensure that all individuals responsible for negligent conduct are liable for same and also ensures that plaintiffs will be compensated for their injuries.

Tennessee law embodies similar principles to the laws of Pennsylvania and Texas. Tennessee employs a three-prong test for assessing proximate cause:

> (1) [T]he tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Russell v. Anderson County*, 2011 WL 486900, at *11-12 (Tenn.Ct.App. Feb. 11, 2011) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn.1991). Further, pursuant to Tennessee law, "[a]n injury may be proximately caused by more than one negligent act or omission [;] [t]hus, a negligent act or omission need not be the sole cause of an injury to be a proximate cause." *Id*. (citing *Kelley v. Johnson*, 796 S.W.2d 155, 159 (Tenn.Ct.App. 1990) and *McClenahan*, 806

S.W.2d at 775).  In addition, "it is not necessary that tortfeasors or concurrent forces act in concert, or that there be a joint operation or a union of act or intent, in order for the negligence of each to be regarded as the proximate cause of the injuries, thereby rendering all tortfeasors liable." *McClenahan*, 806 S.W.2d at 775.  Tennessee operates a modified comparative fault system whereby a plaintiff may not recover in tort against a defendant if he was over 50 percent at fault.  *See McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992).  If a plaintiff is less than 50 percent at fault, his damages are reduced in proportion to the percentage of the total recovery against the responsible parties.  *Id*.  As a consequence, "the proximate contributory negligence of the plaintiff is no longer a bar to recovery." *Reed v. McDaniel*, 2010 WL 623619 (Tenn.Ct.App. Feb. 23, 2010) (citing *McIntyre*, 806 S.W.2d at 57).  Also under this regime, a defendant is "liable only for the percentage of a plaintiff's damages occasioned by that defendant's negligence," rendering contribution claims between co-defendants obsolete.  *McIntyre*, 833 S.W.2d at 58.

In light of the foregoing, there is an actual conflict between the laws of causation provided under the Iraqi Civil Code when compared to the laws of the interested states.

ii.  Classification of the Conflict

Having found that there is an actual conflict between the potentially applicable laws, the Court must next classify the conflict in laws as either "true", "false" or "unprovided for".  To do this, the Court looks to the policies underlying the laws of each jurisdiction and determines whether each jurisdiction has a governmental interest in applying its own laws.  *Budget*, 407 F.3d at 170.

Both parties initially argued that this case presented a "true conflict"; however, the Court

believes that this case actually presents a false conflict when comparing the proffered Iraqi law with the laws of the interested states. (*See* Docket Nos. 216, 218). KBR argues that Iraq has the greatest interest in its law being applied because it is the place of the wrong. (*See* Docket No. 221 ("Plaintiffs fail to address the long line of Pennsylvania cases holding that where the accident and all alleged tortious conduct took place in a particular forum, that forum's law will almost always apply.")). However, KBR seemingly ignores that Pennsylvania long ago abandoned the doctrine of *lex loci delicti*, and does not currently apply the law of the place of the wrong in tort cases. *Griffith*, 416 Pa. 1.

To this end, this case is analogous to *Budget Rent-A-Car System, Inc. v. Chappell*, 407 F.3d 166 (3d Cir. 2005). That decision involved a vehicle accident in Pennsylvania wherein the plaintiff, a New York resident, was injured after her boyfriend, a Michigan resident, fell asleep at the wheel of the car. *Id*. Plaintiff was paralyzed as a result of the accident and brought suit against Budget, a Michigan corporation which had rented the vehicle involved in the accident, under a theory of vicarious liability. *Id*. The Court of Appeals applied Pennsylvania choice of law rules and noted that:

> It is clear that Pennsylvania does not have an interest in applying its law to this dispute. But for the chance occurrence of the accident in Pennsylvania, there is no connection between the Commonwealth and the parties. Pennsylvania has no interest in securing a recovery for [Plaintiff] nor in limiting Budget's liability.

*Budget Rent-A-Car System*, 407 F.3d at 177, n.9. A survey of decisions applying Pennsylvania choice of law rules clearly demonstrates that the law of the place of the wrong no longer governs. *See e.g.*, *Kunreuther v. Outboard Marine Corp.*, 749 F.Supp. 658 (E.D.Pa. Mar. 14, 1990) (applying Pennsylvania law to a products liability action wherein a resident of Pennsylvania was

injured by a product manufactured and sold by an Illinois defendant in the United States but the injury occurred in Jamaica); *Manning v. Richards*, 1992 WL 524239 (Pa.C.P. Jun. 19, 1992) (Pennsylvania law governed a lawsuit arising from an accident in Ocean City, Maryland between two Pennsylvania residents); *Davis v. Sch. Dist. of Philadelphia*, 496 A.2d 903 (Pa.Cmwlth 1985) (Pennsylvania law applied to an action wherein the plaintiffs and defendant were Pennsylvania residents but the accident occurred in Virginia); *Farrell v. David Davis Enterprises, Inc.*, 1996 WL 21128 (E.D. Pa. Jan. 19, 1996) (Pennsylvania law applied to a case where an accident occurred in New Jersey involving New Jersey plaintiffs and Pennsylvania defendants because the case involved a "false conflict"); *Carter v. Nat'l R.R. Passenger Corp.*, 413 F.Supp.2d 495 (E.D. Pa. Jul. 26, 2005) (Pennsylvania law applied to case involving an injury in Maryland, plaintiff from Pennsylvania and a defendant from the District of Columbia)

As discussed above in reference to the applicability of 16 U.S.C. § 457, KBR cites a number of decisions involving injuries on military bases and several arising under the Federal Tort Claims Act for support of its position that Iraqi law should be applied, including *Jenkins v. Whitaker*, 785 F.2d 720 (9th Cir. 1986); *Burgio v. McDonnell Douglas, Inc.*, 747 F. Supp. 865, 867-68 (E.D.N.Y. 1990); *Shankle v. United States*, 796 F.2d 742, 744 (5th Cir. 1986) (military base); *Lutz v. United States*, 685 F.2d 1178, 1182 (9th Cir. 1982) (military base). However, those decisions are distinguishable because none of them applied Pennsylvania choice of law rules. The wrongful death decisions applied the choice of law rules of the jurisdiction where the lawsuit was filed and none of the cases were filed in Pennsylvania. On the other hand, the FTCA requires that courts apply the choice of law rules of the location of the injury.

The Court now returns to Pennsylvania choice of law rules. Here, the Court has not been

presented with any evidence of the policies underlying the causation law proffered by KBR. (*See* Docket No. 216-1). Professor Hamoudi's expert reports do not address such policies. (*Id.*; Docket No. 220-1). However, even assuming that among Iraq's reasons for adopting such a law is to protect a second actor from being held liable when the first actor's negligence would have caused the injury in the first instance, it is not clear that this policy will even be implicated in this case. Based on the prior arguments that have been presented to the Court in this case, the Court understands that KBR's position in this litigation is that the Army was allegedly negligent in its decisions and actions related to housing soldiers in Iraqi buildings with known substandard electrical systems. By advancing the causation law under the Iraqi Civil Code, KBR argues that if that law were applied, the Army's negligence would subsume its own negligence, if any. But, as this Court has recognized in its prior decisions, Plaintiffs allege that KBR was negligent not only in its failure to act and to warn Staff Sergeant Maseth of known electrical hazards, but also for its negligent performance of maintenance services on LSF-B1 and the malfunctioning water pump. (*See* Docket No. 209). The evidence previously presented to the Court suggests that KBR fixed the actual water pump on more than one occasion and was aware that it had caused other soldiers to be shocked in the same shower where Staff Sergeant Maseth was killed. *See Harris*, 618 F.Supp.2d at 413-14. Thus, while Plaintiffs' failure to act and/or warn claims may be implicated by the stated Iraqi policy, it does not appear to apply to the negligent performance claims.

Iraq's interest in applying its law in this case is also questionable, at best. KBR argues generally that Iraqi has a strong interest in applying its laws to government contractors given the language in the recent Status of Forces Agreement removing the immunities previously afforded

to government contractors and to situations wherein wrongful conduct occurs within its borders. (Docket Nos. 216, 221). KBR also implies that Iraq's laws are designed to foster investment in its nation by foreign companies, such as KBR, and to encourage such businesses to operate in Iraq.[10] (*Id.*).

This Court, however, does not believe that any of the interests identified by KBR further the assumed policies underlying Iraq's causation laws, i.e., to protect a second negligent actor from liability when the first actor's negligence would have caused the harm without the second act. None of the parties to this dispute are from Iraq, although the alleged tortious activity and harm occurred within a military base positioned in that country. On the other hand, Plaintiffs have sustained loss here in Pennsylvania. Iraq's law may be defense oriented but the defendant here, KBR, is a United States corporation, situated in Texas. Even though KBR operates in locations around the world, there is simply no reason for it to be shielded by Iraq's pro-defendant law in this case. Further, the supposed policies underlying this aspect of Iraqi law will not be impaired if the law of Pennsylvania (or Tennessee) is applied.

KBR relies heavily on *Tonkon v. Denny's, Inc.*, 650 F.Supp. 119 (E.D. Pa. 1986) in support of its position, but *Tonkon* is easily distinguishable from this case. In *Tonkon*, a Pennsylvania resident fell on a public sidewalk outside a Denny's restaurant in Mexico City, Mexico. Denny's is a California corporation. The Court in *Tonkon* applied Pennsylvania choice of law rules and, despite not referencing the actual laws of Mexico, found that Mexican law should be applied to Denny's alleged negligent conduct because "Mexico … has a strong interest in regulating the conduct of corporations in its country, particularly foreign companies who

---

[10]      Again, this supposition is not supported by any evidence of the actual policy reasons underlying Iraq's causation law. *See* § III.A., *supra*.

invest in Mexican enterprises and, therefore, bolster its troubled economy." *Id*. at 122.

KBR's business operations in Iraq were not akin to Denny's operations in Mexico. KBR operated in Iraq under a contract with the United States Army to provide services in support of the United States' military mission. The Court agrees that, in 2008, that mission may have benefited Iraq in some fashion, including, among other things, rebuilding Iraq's infrastructure and providing additional security. But, KBR certainly was not invited nor encouraged by Iraq's government to engage in business there. Instead, KBR's presence in Iraq was solely attributable to the United States' continued presence in that country after the initial invasion.

Further, Order 17 undermines Iraq's supposed interests in this litigation. *See* CPA Order 17. Pursuant to the CPA, Iraq agreed that government contractors such as KBR would not be subject to Iraq's laws in relation to their contracts, were immune from Iraqi process and that third party claims for personal injury and death should be resolved under the laws of the Sending State, i.e., the laws of the United States of America. CPA Order 17, §§ 4.2, 18. In addition, even though the immunity granted to government contractors was lifted by the execution of the Status of Forces Agreement, Order 17 was in effect on the date of Staff Sergeant Maseth's death, January 2, 2008. *See* CPA Order 17 § 20 (Effective Period, "This Order shall enter into force on the date of signature. It shall remain in force for the duration of the mandate … and shall not terminate until the departure of the final element of the MNF from Iraq, unless rescinded or amended by legislation duly enacted and having the force of law.").

For these reasons, Iraq does not have any interest in applying its laws of causation to this case.

In contrast, Pennsylvania, Tennessee and Texas have pro-plaintiff causation laws,

wherein negligent actors are held responsible for tortious conduct in proportion to the percentage of their negligence. Plaintiffs are Pennsylvania citizens. Staff Sergeant Maseth's estate is being administered in Tennessee. Thus, both Pennsylvania and Tennessee have a strong interest in applying their respective pro-plaintiff causation laws in this case. Moreover, the interests of these states in achieving full compensation for Plaintiffs and Staff Sergeant Maseth's estate would be impaired if Iraqi law were applied. KBR is headquartered in Texas. Because the only Texas citizen in this case is the defendant, Texas has little interest in applying its pro-plaintiff law to the instant causation issue.

### iii.    Conclusion

In sum, Iraq has no interest in applying its causation law to this litigation, Texas has little interest in its law being applied, while the laws and policies of Pennsylvania and Tennessee would be impaired if Iraqi law was applied. Therefore, after applying Pennsylvania's choice of law principles, the Court finds that the conflict in laws results in a "false conflict" between the proffered Iraqi law and the laws of the interested states. When there is a false conflict, the court must apply the law of the only interested jurisdiction. *Budget Rent-A-Car*, 407 F.3d at 170. Here, Pennsylvania and Tennessee are both interested jurisdictions. There are subtle differences between the laws of Pennsylvania and Tennessee which potentially impact the present litigation. The present arguments, however, only tangentially address whether Pennsylvania or Tennessee law should be applied. Thus, the Court expresses no opinion regarding whether there is an actual conflict between these laws, or the classification of any potential conflict. At this juncture, the Court holds only that Iraqi causation law, as proffered by KBR, will not be applied.

### b.    Recovery of Pain and Suffering Damages by Heirs

Under Iraqi law, "compensation for material harm that has befallen a decedent victim, such as hospital or funeral expenses, is recoverable under Iraqi law, but compensation for moral harm such as pain and suffering or emotional distress *on the part of the decedent* (as opposed to his family members), is not." (*Id*. at ¶ 44). The proffered reasons or policies for this law include that Iraq's Civil System does not employ any procedure akin to the system of estates used in the United States after one's death and that under Iraqi legal theory the value of the pain and suffering of a decedent remains inchoate until a judicial ruling or agreement by parties. (*Id*.). Thus, if the individual dies, his heirs cannot claim a right to compensation for these injuries and damages. (*Id*.). Undoubtedly, this is a pro-defendant law and permits an otherwise negligent actor to be free from liability if his or her negligent conduct results in the death of the harmed individual.

However, Iraq has no interest in restricting the potential damage award against KBR in this case. Particularly apt here is holding by the Pennsylvania Supreme Court in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (Pa. 1964). The *Griffith* Court held that "the state in which injury occurred […] has relatively little interest in the measure of damages to be recovered unless it can be said with reasonable certainty that defendant acted in reliance on that state's rule. Moreover, where the tort is unintentional, the reliance argument is totally untenable." *Griffith*, 416 Pa. at 24.

For the same reasons set forth above, KBR did not rely on Iraq's laws when deciding whether to do business there. Instead, it decided to do business with the United States Army. Its contracts with the Army, including the LOGCAP III base contract and Task Order 139 at issue here, make no reference to Iraqi law or Iraqi standards for construction, electrical work or

plumbing services.  (*See e.g.*, *LOGCAP III contract*; *LOGCAP III Contract, Statement of Work*; *Task Order 139*); *see also Harris*, 618 F.Supp.2d at 403-415 (describing the contracts at issue). Likewise, Order 17 expressly provides that such contracts may be awarded in accordance with the laws of the United States.  CPA Order 17, § 4.1.  Order 17 also states that government contractors were: not subject to Iraqi laws or regulations in relation to the terms and conditions of their contracts; immune from Iraqi legal process; and that certain claims by third parties should be dealt with in accordance with the laws of the United States.   CPA Order 17, §§ 4.2, 4.3, 18.  In all, there is simply no evidence of KBR's actual reliance on Iraqi law in connection with its operations in Iraq.[11]  Plaintiffs' claims against KBR rely on a negligence theory, and they also seek punitive damages based on alleged willful, reckless or otherwise actionable conduct by KBR.  (Docket No. 209).  However, they do not allege that KBR committed any intentional torts which caused Staff Sergeant Maseth's death.  (*Id.*).  Given same, under *Griffith*, any argument that KBR relied on Iraqi law in its actual operations "is untenable."  *Griffith*, 416 Pa. at 24.

In sum, Iraq has no interest in protecting a foreign corporation from liability or damages to a non-citizen under a survival-type theory and KBR cannot be said to have relied on Iraq's laws because there is no evidence of actual reliance.  For these reasons, Iraq's laws will not be impaired if the laws of another jurisdiction are applied.

Pennsylvania, Tennessee and Texas law clearly permit recovery for a decedent's pain and suffering and consequent damages.  *See* 42 Pa.C.S. §§ 8301, 8302; Tex.Civ.Prac. & Rem.Code.Ann. §§ 71.002, 71.021; Tenn.Code.Ann. §§ 20-5-106 – 113, 20-5-101 – 105 and 114

---

[11]     Of course, KBR continues to rely on the laws of the United States to defend this litigation, including raising the following defenses: the political question doctrine which relies on the text of the United States Constitution; the combatant activities exception to the Federal Tort Claims Act, a federal statute; and has also raised the government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Supreme Court jurisprudence, in its Answer.  (*See* Docket No. 217).

- 120.  The right to compensation in these jurisdictions accrues immediately on injury and survives the death of the decedent.  *Id*.  The policy reasons for these laws are to compensate the decedent's heirs for the harm suffered by the decedent while he or she was alive.  The compensation is paid into the decedent's estate and, through the administration of the estate, those funds are used to pay off the decedent's creditors and the remaining funds are passed onto the decedent's beneficiaries.  Here, again, Plaintiffs are Staff Sergeant Maseth's parents, who are also the administratrix and administrator of his estate.  Plaintiffs have asserted claims against KBR in their own right under Pennsylvania's wrongful death statute.  *See Baumgart v. Keene Building Products Corp*, 633 A.2d 1189, 1191-92 (Pa. Super. Ct. 1993) ("in a wrongful death cause of action, recovery depends upon the rights of action that the beneficiaries, as named by statute, possess. Moreover, recovery amounts to the pecuniary loss suffered by the beneficiaries by being deprived of the part of the decedent's earnings they would have received had the decedent lived.");  *Moyer v. Rubright*, 651 A.2d 1139, 1141 (Pa.Super.Ct. 1994) ("wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate. Wrongful death damages are implemented to compensate the spouse, children, or parents of the deceased for the pecuniary loss they have sustained by the denial of future contributions decedent would have made in his or her lifetime.") *see also* 42 Pa.C.S.A. § 8301.[12]  In this claim they seek damages that they have suffered as a result of KBR's alleged

---

[12]     42 Pa.C.S.A. § 8301 provides that:

>     (a) General rule.--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for

negligent conduct.  *Id.*  They are also administering Staff Sergeant Maseth's estate in Tennessee and Tennessee's laws are potentially implicated.[13]  Thus, Pennsylvania and Tennessee clearly have an interest in their respective laws being applied to this case.  Texas has no interest because its citizen, KBR, is not seeking to invoke its survival laws.

Like the causation issue, the Court is presented with a "false conflict."  Iraq and Texas have no interest in the application of their respective laws, but the laws of Pennsylvania and Tennessee would be impaired if Iraqi law were applied.  Accordingly, KBR's motion to apply

---

the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) Beneficiaries.--Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

(c) Special damages.--In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) Action by personal representative.--If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

[13]     To this end, KBR argues that "[t]he mental suffering of the parents is not an element of damage for which [Tennessee] law allows compensation", quoting *Garis v. Eberling*, 71 S.W.2d 215, 231 (Tenn. App. 1934).  In this Court's estimation, Plaintiff's Amended Complaint does not expressly seek this type of damages on behalf of Plaintiffs themselves.  (Docket No. 209).  However, the Court notes that in *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.3d 593, 601-602 (Tenn. 1999), the Supreme Court of Tennessee held that under Tennessee's wrongful death and survival statutes, "consortium-type damages may be considered when calculating the pecuniary value of a deceased's life."  *Id.*  Further, "[l]oss of consortium consists of several elements, encompassing not only tangible services provided by a family member, but also intangible benefits each family member receives from the continued existence of other family members.  Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love…"  *Id.*

Iraqi survival law is denied.[14]

### C. Damages – Punitive Damages

Punitive damages are not available under Iraqi law. (Docket No. 216-1 at ¶ 49). The reasons proffered for the lack of punitive damages are that: the Iraqi Civil System permits damages for the purposes of compensation and making a victim whole, only; the Iraqi Criminal System is designed to punish and deter conduct; and, the Iraqi Criminal System takes precedence above all civil actions to the extent that a civil action is stayed pending any criminal prosecution resulting from the same set of facts and circumstances. (Docket No. 216-1 at ¶¶ 49-56).

In contrast, punitive damages are available under the laws of Texas, Tennessee and Pennsylvania. *See Hutchinson ex rel. Hutchison v. Luddy*, 582 Pa. 114 (Pa. 2005) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others"); Tex. Civ. Prac. & Rem. Code §41.001(5) (""exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes … 'exemplary damages' includes punitive damages."); *Sanford v. Waugh & Co., Inc.*, 328 S.W.3d 836, 849 (Tenn. 2010) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992). ("To be entitled to an award of punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant 'acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.'")). The laws of these jurisdictions permit punitive damages in order to punish conduct that rises to the levels of

---

[14]    In so holding, the Court notes that it is interesting that on one hand KBR advocates that 16 U.S.C. § 457, a federal statute which generally authorizes an individual to bring a wrongful death and survival claim arising from injuries which occur on federal land, should apply, while simultaneously arguing that Iraqi law does not permit such claims. As set forth in the legislative history supplied by KBR, the purpose of section 457 was to provide a right of action for wrongful death and survival under federal law where it was not previously available. *See* n. 5, *supra*. Adoption of KBR's argument would frustrate this clearly stated purpose.

culpability needed to sustain a claim for punitive damages. *See e.g., Hutchison*, 582 Pa. at 121-22 ("The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct."); Tex. Civ. Prac. & Rem. Code § 41.001(5); *Sanford*, 833 S.W.3d at 901 (internal quotations omitted) ("punitive damages are intended to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him"). The purposes for punitive damages under Pennsylvania and Tennessee law also include deterrence, while Texas appears to have abandoned deterrence as a reason for punitive damages. *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 676-77 (Tex. 2008) ("In 1995, the Legislature renumbered the provision Section 41.001(5) and amended it to delete the phrase, 'as an example to others', leaving punishment as the sole purpose of punitive damages." and "[t]he Legislature's enlargement of the scope of Chapter 41 over time reflects its intent to establish punishment of the defendant as the sole purpose of punitive damages in Texas.").

At the outset, the Court notes that it expresses no opinion regarding whether an award of punitive damages would be proper at this early juncture of the litigation, or which state's laws governing punitive damages apply here. However, weighing the policies and respective interests of the relevant jurisdictions, the Court is again faced with a "false conflict" between the laws of Iraq vis-à-vis the laws of Texas, Tennessee and Pennsylvania. The reasoning employed above regarding the potential recovery of pain and suffering damages is equally applicable here.

In addition, KBR is an American corporation (Texas) and American laws (Texas law) generally authorize an award of punitive damages if the circumstances permit same. As such, KBR should expect that it may be liable for punitive damages if its conduct supports such an

award, regardless of where it occurs and especially in instances where claims are brought against it by fellow Americans. A leading treatise suggests that "[i]n the international sphere it is generally considered appropriate to apply the laws of the domiciliary state to tort claims that involve the residents of a single country." *Hays, et al.*, *Conflict of Laws* § 17.57 (5th ed. 2010). Those commentators further state that:

> It is true that, when the conduct occurs in a state that does not allow punitive damages, that state has a certain interest in applying its law to protect that conduct. However, the fact that the consequences of that conduct are felt in another state and are caused by a tortfeasor domiciled in a third state that also imposes punitive damages puts that interest in juxtaposition with the contrary interests of the latter two states. On balance, it is reasonable to conclude that the interest of the conduct state must give way.

*Id.* at § 17.50.

The proffered policy underlying the lack of punitive damages in Iraq, i.e., the relationship between the criminal and civil laws of Iraq, is not violated by the application of punitive damages laws of another jurisdiction in this case. There has been no suggestion that Iraqi authorities undertook a criminal investigation of any kind arising from the facts and circumstances of this case. However, as the parties are well aware, the United States Army investigated the facts and circumstances of this case and declined to bring criminal charges against KBR. (*See* Docket No. 186-3, Army Completes Staff Sgt. Maseth Death Investigation; August 7, 2009). Indeed, the fact that the United States undertook the criminal investigation undermines Iraq's supposed interest in administering its laws in the manner described by Professor Hamoudi. In addition, as a government contractor, KBR was immune from suit in Iraq at the time of Staff Sergeant Maseth's death. *See* CPA Order 17, § 4.3. Thus, Iraq's interest in

administering its criminal and civil laws in the manner described by Professor Hamoudi is not implicated.

To conclude, the issue of punitive damages presents yet another "false conflict" between the laws of Iraq and the laws of the interested states. The purposes underlying the absence of punitive damages in Iraqi law will not be impaired if the laws of one of the interested states is applied. In contrast, the laws of the interested states will be impaired if Iraqi law is applied. Finally, as noted above, KBR is a Texas corporation and should expect that punitive damages may be awarded against it as a result of its conduct both here and abroad, especially in cases involving plaintiffs from the United States.[15] Like before, the Court reserves ruling on the appropriate state law to be applied to Plaintiffs' claim for punitive damages in this case until a factual predicate has been shown and the issues are fully briefed and argued by the parties.

### d. Conclusion – Pennsylvania Choice of Law Rules

Even if KBR had met its burden to demonstrate Iraqi law to the Court, after applying Pennsylvania choice of law rules to this action, the Court finds that Iraq has no interest in the application of its laws of causation, survival and punitive damages to this litigation. Accordingly, KBR's motion to apply Iraqi law fails under this Court's analysis.

### IV. CONCLUSION

Based on the foregoing, KBR's motion to apply Iraqi is denied. The Court's holding is

---

[15] To this end, the Court notes that the plaintiff in the matter of *Jones v. Halliburton Co., et al.*, Civ. A. No. 4:07-cv-02719 (S.D.Tex), in which KBR is also a defendant, has asserted a claim for punitive damages against KBR under Texas law. *See Jones*, Civ. A. No. 4:07-cv-02719, Docket No. 222. The plaintiff in *Jones*, a former KBR employee, alleges that she was forcefully raped by a former co-worker while they were stationed at Camp Hope in Iraq. *Id*. In the District Court's most recent opinion in that case, *see Jones*, 2011 WL 2066621, there is no suggestion that Iraqi law should be applied. *Id*. Instead, the court analyzes Texas common law principles in relation to employment-related claims advanced under the Texas Commission on Human Rights Act and Title VII of the Civil Rights Act. *Id*. KBR has argued, among other things, that the plaintiff's common law claims arising from the rape were precluded by her claims under the Texas Commission on Human Rights Act under what amounts to a sexual harassment hostile work environment theory. *Id*. A jury trial commenced in this case on June 13, 2011.

limited to this issue and the Court expressly reserves ruling as to which of the interested states' laws apply to Plaintiffs' claims and KBR's defenses in this action going forward. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Court

Date:   June 17, 2011

cc/ecf:  All counsel of record