# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHERYL A. HARRIS, Co-Administratrix of the Estate of RYAN D. MASETH, deceased, and DOUGLAS MASETH, Co-Administrator of the Estate of RYAN D. MASETH, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG, BROWN & ROOT SERVICES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 08-563<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Presently before the Court are Defendant Kellogg, Brown & Root Services, Inc.'s

("KBR") motion for reconsideration of the Court's June 17, 2011 Memorandum Opinion and

Order denying its motion for the application of Iraqi law to this case (Docket No. 241) and

Plaintiffs Cheryl A. Harris and Douglas Maseth's ("Plaintiffs") response thereto (Docket No.

244).  KBR asserts that the Court committed numerous errors in resolving its motion for the

application of Iraqi law, while Plaintiffs find no errors in the Court's discussion.  (Docket Nos.

242, 244).  Upon consideration of the parties' submissions and the relevant standard governing

motions for reconsideration, and for the following reasons, KBR's motion [241] is denied.

### II.  BACKGROUND[1]

---

[1]     The Court limits its discussion of the background to the facts relevant to the disposition of the instant motion for reconsideration.  For further discussion of the facts, please consult the prior decisions by this Court and the United States Court of Appeals for the Third Circuit.  *See Harris v. Kellogg, Brown and Root Services, Inc.*, 618 F.Supp.2d 400 (W.D.Pa. 2009), *appeal dismissed*, 618 F.3d 398 (3d Cir. 2010); *Harris*, 2010 WL 4614694 (W.D.Pa. Nov. 5, 2010) (denying KBR's motion for entry of a case management order); *Harris*, --- F.Supp.2d ----,

This action arises out of the tragic death of Staff Sergeant Ryan D. Maseth, who was electrocuted while showering at a military base in Iraq. *Harris*, 2011 WL 2462486, at *1.  His parents, who are administering his estate, brought this action against KBR, the private defense contractor that contracted with the United States Army to provide maintenance services at the base, alleging, among other things, that KBR's negligence in its performance or non-performance of certain maintenance services was the proximate cause of Staff Sergeant Maseth's death.  *Id.* at *1-2.

Pertinent here, KBR filed a motion requesting that Iraqi law be applied to this case, citing three separate provisions of the Iraqi Civil Code.  (Docket No. 215).   After considering the parties' extensive briefing, evidentiary submissions and hearing oral argument from counsel at a motion hearing on April 5, 2011, the Court denied KBR's motion for the application of Iraqi law on June 17, 2011.  *Harris v. Kellogg, Brown and Root Services, Inc.*, --- F.Supp.2d ----, 2011 WL 2462486 (W.D.Pa. Jun. 17, 2011).   In its decision, the Court denied KBR's motion on two, alternative bases, holding that: (1) KBR failed to meet its burden under Rule 44.1 to present evidence of the potentially applicable Iraqi law and to persuade the Court that such law should apply; and (2) after applying Pennsylvania choice of law rules, and weighing the interests of the potentially interested jurisdictions, Iraq, Pennsylvania, Texas and Tennessee, the proffered Iraqi laws would not be applied.  *Id.*   The Court also expressly reserved ruling as to which of the interested states' laws will apply to Plaintiffs' claims and KBR's defenses.  *Id.* at *21.

Dissatisfied with the Court's decision, KBR filed the instant motion for reconsideration on July 1, 2011.  (Docket No. 241).  Along with its motion, KBR submitted a brief in support, a third affidavit from Professor Hamoudi and an amicus brief submitted by the Solicitor General's Office to the Supreme Court in *Saleh et al. v. Titan Corp. et al.*  (Docket No. 242).  KBR alleges

---

2011 WL 2462486 (W.D.Pa. Jun. 17, 2011) (denying KBR's motion for the application of Iraqi law).

that the Court committed numerous errors in its decision and also requested that the Court schedule oral argument on its motion. (*Id.*). Plaintiffs filed their brief in opposition to KBR's motion for reconsideration on July 11, 2011, opposing both reconsideration and the request for an additional hearing. (Docket No. 244). The Court denied KBR's request for a hearing on August 24, 2011 (Docket No. 245) and notified the parties that the motion would be submitted on the briefs. As all briefing has concluded, the motion is now ripe for disposition.

III. LEGAL STANDARD

It is well settled that reconsideration of a prior order is only warranted if the moving party demonstrates: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Bootay v. KBR, Inc.*, No. 10-4028, 2011 WL 2713804, at *5 (3d Cir. 2011) (noting same legal standard on a motion for reconsideration).

A party's mere disagreement with the Court does not translate into the type of clear error of law which justifies reconsideration of a ruling. *Miller v. Lamas*, 2011 WL 398408, at *1, Civ. Act. No. 10-51 (M.D.Pa. Feb. 2, 2011) (citing *Dodge v. Susquehanna Univ*., 796 F.Supp. 829, 830 (M.D.Pa.1992)). Furthermore, "because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Id*. (quoting *Continental Casualty Co. v. Diversified Indus.*, Inc., 884 F.Supp. 937, 943 (E.D.Pa. Mar. 27, 1995)). It is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the Court. *Id*. (citing *Dodge*, 796 F.Supp. at 830). Rather, such a motion is appropriate only where the court misunderstood a party or where there

3

has been a significant change in law or facts since the Court originally ruled on that issue. *Id*. (citing *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. Sept. 1, 1983)).

IV. DISCUSSION

In light of the aforementioned legal standard, the Court will first address the alleged changes in law and/or new evidence presented by KBR and will then discuss KBR's claims that the Court committed legal and factual errors.

    A.    Changes in Law / New Evidence

First, the Court finds that the two documents KBR has attached to its motion for reconsideration, i.e., the Solicitor General's Brief for the United States as Amicus Curiae filed with the Supreme Court in *Saleh et al. v. Titan Corp. et al.*, and a third affidavit from Professor Hamoudi, do not constitute new evidence or represent changes in the controlling law which would warrant reconsideration. (Docket Nos. 242-1, 242-2).

To this end, the Solicitor General's brief in the *Saleh* case was filed in May of 2011. (Docket No. 242-2). Thus, it was available prior to the Court's disposition of the motion for application of Iraqi law on June 17, 2011. *Harris*, 2011 WL 2462486. Although the brief is filed by the Solicitor General on behalf of the United States, it is not binding authority. It simply represents the position of that Office on behalf of the United States in the *Saleh* litigation. (*See* Docket No. 242-1). Specifically, it addresses the issue of whether the Supreme Court should grant a writ of certiorari and review the *Saleh* decision. (*Id*.). Therefore, the Solicitor General's brief constitutes neither a change in the law nor new evidence that was unavailable prior to the Court's disposition of the present motion.[2] *See Max's Seafood Café by Lou-Ann, Inc.*, 176 F.3d

---

[2]    The Court also agrees with Plaintiffs that the Solicitor General's position set forth in the brief does not wholly support KBR's position in this case. In *Saleh*, the contractors were used in the roles of interpreters and

at 677. Accordingly, KBR's motion for reconsideration is denied to the extent that it is based on the Solicitor General's brief.

A third affidavit from Professor Hamoudi is also now before the Court. (Docket No. 242-1). It contains further analysis of CPA Order 17, particularly section 18. (*Id.*). As the Court noted in the Opinion denying KBR's motion for the application of Iraqi law, Hamoudi's analysis of this section was absent from his first and second affidavits. *Harris*, 2011 WL 2462486, at *5, 7-8. But, from the Court's view, Hamoudi's analysis could have and should have been included given that the interpretation of section 18 was contested by the parties. *Id.* at *7-8. Hamoudi actually admits that he previously offered expert opinions in federal litigation about CPA Order 17 prior to his engagement in this case. (Docket No. 242-1). But, Hamoudi explains that he only offered his opinions regarding CPA Order 17 in his second affidavit in this case because he thought that it did not apply in any fashion. (*Id.*). Therefore, the evidence presented in the third affidavit is not "newly discovered" as it was available prior to the Court's disposition of the subject motion. *See Max's Seafood Café*, 176 F.3d at 677. For reasons left unstated, KBR and Hamoudi apparently decided not to include this information in their earlier submissions. As the evidence is not newly discovered, KBR's reliance on same does not support its motion for reconsideration.

The Court further notes that both KBR and Hamoudi appear to misunderstand why the Court questioned his "credibility" in the Opinion. (Docket Nos. 242, 242-1). It had nothing to do with his qualifications, as they suggest. (*Id.*). His qualifications were accepted by Plaintiffs and the Court. *See Harris*, 2011 WL 2462486 at n.1 ("Plaintiffs have not contested that Professor

---

interrogators and effectively operated as soldiers in those roles, (*see* Docket No. 242-2), as opposed to the operations and maintenance services provided by KBR and its employees in this case. Indeed, this Court previously distinguished the lower court decisions in that litigation for the same reasons in our Opinion denying KBR's motion to dismiss. *See Harris v. Kellogg, Brown & Root Services*, Inc., 618 F.Supp.2d 400, 433 (W.D.Pa. 2009).

Hamoudi is properly qualified as an expert in Iraqi law."). The Court simply questioned why Hamoudi ignored CPA Order 17 in his initial affidavit and then only addressed two of the three sections which were raised by Plaintiffs in his second affidavit.[3]  *Harris*, 2011 WL 2462486, at *7-8.  Perhaps Hamoudi's opinions regarding CPA Order 17 and section 18 were left out as a part of KBR's litigation strategy?   To this end, KBR argued in its first pleading in this case, its Notice of Removal filed on **April 22, 2008**, that CPA Order 17 was applicable and controlling in this case.  (*See* Docket No. 1, Notice of Removal, ¶¶ 30, 38).[4]  However, despite these claims made at the outset of the litigation, KBR's retained expert, Hamoudi, failed to address CPA Order 17, until he was prompted to do so by the Plaintiffs.   Indeed, Hamoudi was plainly aware of CPA Order 17 given his significant experience with Iraqi law and his work as an expert in other federal litigation specifically addressing CPA Order 17.   He even admitted in his second affidavit that CPA Orders were a valid part of Iraqi law. (Docket No. 220–1 at ¶ 2). As a consequence, the only reasonable conclusion that can be drawn from these facts is that KBR's legal team and its expert witness made deliberate choices to abandon KBR's earlier arguments which relied on CPA Order 17 in favor of what they perceived to be a stronger argument under

---

[3]      Specifically, the Court stated:

> Hence, the Court questions the credibility of the defense expert, given the lack of any reference to Order 17 in his initial report and the lack of completeness in his supplemental report. *See BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 268 (3d Cir. 2000) (holding that under Rule 44.1 "the District Court is in the best position to determine what at this point is essentially a credibility issue—i.e., which expert to believe.").

(Docket No. 235 at 12).

[4]      Specifically, KBR argued that "[i]n addition, because KBRSI was acting pursuant to its contract with the military, it enjoys immunity from suit pursuant to Order 17 and other guidelines set forth by the Coalition Provisional Authority ('CPA'), the provisional Iraqi government organized by the United States and its coalition partners after the 2003 invasion in Iraq. *See, e.g.*, CPA Order Number 17 (Revised) (signed on June 27, 2004 by L. Paul Bremer, U.S. Ambassador and CPA Administrator)(Section 4 – Contractors: "Contractors shall be immune from Iraqi legal process with respect to acts performed by them pursuant to the terms and conditions of a Contract or any sub-contract thereto." (Docket No. 1 at ¶ 30).  KBR further asserted that "[t]he case also will require the interpretation and application of Coalition Provisional Authority Order 17, which provides immunity for contractors providing services in Iraq").  (Docket No. 1 at ¶ 38).

the Iraqi Civil Code.  From the Court's view, the expert's opinions are therefore tainted by

KBR's evolving litigation strategy[5] enough to question his "credibility" for not apprising the

Court of the full body of Iraqi law which was potentially applicable in this case.[6]

For these reasons, KBR's motion for reconsideration is denied to the extent that it has not

sufficiently demonstrated any change in the applicable law or presented any new evidence which

support reconsideration of the Court's Memorandum Opinion.  *See Max's Seafood Café*, 176

F.3d at 677.

B.     *Errors of Law / Fact*

---

[5]      From this Court's view, KBR's litigation strategy in this case – as exemplified by the CPA Order 17 issue –
is one that constantly shifts to a point where it eventually takes contradictory positions.  For example, KBR argued
in its initial motion to dismiss that the United States Army exercised an "envelope of control" over KBR and its
activities at the RPC such that the political question doctrine barred the Plaintiffs' lawsuit.  As is discussed below,
KBR now claims that Iraq had much more of a presence at the RPC in an effort to show that its law should apply to
Plaintiffs' common law claims.   Finally, the Court notes that in the *Bootay* litigation, which also involved a
personal injury claim by a soldier against KBR for claimed injuries he sustained in Iraq, KBR agreed that
Pennsylvania law governed the plaintiff's negligence claims.  *See Bootay*, 2011 WL 2713804, at n.3 ("The parties
[Bootay and KBR] do not dispute that Pennsylvania law applies to this case.  Consequently, we shall apply
Pennsylvania law.").

The Court further notes that in *Bootay*, the Court of Appeals affirmed Judge McVerry's decision that KBR
did not owe a duty to warn Bootay of the hazards of sodium dichromate exposure under general negligence
principles, KBR's contract with the government or a third party beneficiary theory.  *Id.* at *1.  The Court of Appeals
analyzed these claims under Pennsylvania law, which has adopted provisions of the Restatement (Second) of Torts.
*Id.* at *3-4.  In so holding, the Court of Appeals also referenced this case and noted that:

> Bootay's reliance on *Harris v. Kellogg, Brown & Root Services, Inc.*, 618
> F.Supp.2d 400 (W.D.Pa.2009), in support of his negligence claim is also
> misplaced. That case involved KBR's performance of a contractual obligation to
> repair defective wiring, and the tragic consequences of its negligent performance
> of this contractual obligation. In this case, by way of contrast, Bootay cannot
> point to any contractual obligation on the part of KBR that would impose upon it
> a duty to warn soldiers of sodium dichromate exposure.

*Id.* at n.5.

[6]      To this end, the purpose of Rule 44.1 is to afford the parties the opportunity to educate the Court regarding
the potentially applicable foreign law.  *See Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d
Cir.1999). ("The parties ... generally carry both the burden of raising the issue that foreign law may apply in an
action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case.").  In this
Court's estimation, the requirements of Rule 44.1 cannot be met if a party does not provide the Court with the full
body of law or relies only on certain portions of same while failing to disclose others.  *Id.*  This Court expects
candor from the attorneys who appear before it, including attorneys acting as expert witnesses.   *See*
PA.R.PROF.CONDUCT. § 3.3(a)(2) ("A lawyer shall not knowingly … fail to disclose to the tribunal legal authority in
the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed
by opposing counsel.").

KBR next claims that the Court made a number of erroneous legal conclusions and factual findings during its analysis of whether Iraqi law should apply to this case. (Docket No. 242). Specifically, KBR challenges the Court's analysis of CPA Order 17, its application of Pennsylvania choice of law rules and essentially all other aspects of the Court's decision. Plaintiffs find no error with the Court's analysis. (Docket No. 244). From the Court's view, KBR "protests too much" and, for the following reasons, has not demonstrated that reconsideration of the Court's decision is warranted.

    1.  <u>CPA Order 17</u>

        i.  Improper Interpretation of the Court's Opinion

KBR asserts a number of arguments denigrating the Court's analysis of CPA Order 17. (Docket No. 242). Before addressing KBR's specific positions, the Court notes that KBR's arguments suggest that its counsel simply misreads the Court's June 17, 2011 Memorandum Opinion. The only relief that KBR requested in its motion was that three specific Iraqi legal principles should be applied in this case, i.e., those set forth in Articles 205, 207 and 211 of the Iraqi Civil Code. (Docket No. 215). As a result, the Court limited its holding to whether the three provisions of the Iraqi Civil Code cited by KBR applied to this litigation. *See Harris*, 2011 WL 2462486, at *1 ("In this Memorandum Opinion, the Court addresses the narrow question of whether Iraqi law should be applied to certain of Plaintiffs Cheryl Harris and Douglas Maseth's ("Plaintiffs") claims in this case, as requested by Defendant Kellogg, Brown & Root Services, Inc. ("KBR")); *Id.* at *21 ("Based on the foregoing, KBR's motion to apply Iraqi is denied. The Court's holding is limited to this issue"). The Court concluded that these three provisions did not apply and then "expressly reserve[d] ruling as to which of the interested states' laws [will] apply to Plaintiffs' claims and KBR's defenses in this action going forward." *Id.* at 21.

KBR claims that the Court's reasoning offered in support of its holding is "internally inconsistent"[7] but fails to recognize that the Memorandum Opinion actually sets forth alternative rulings: (1) that KBR failed to meet its burden under Rule 44.1 to present the Court with applicable Iraqi law because KBR only presented the Court with Iraqi Civil Code provisions and failed to thoroughly address the relevant sections of CPA Order 17; and (2) that under a Pennsylvania choice of law analysis, the provisions of the Iraqi Civil Code proffered by KBR would not apply when compared with parallel provisions under the laws of Texas, Pennsylvania, and Tennessee.  (Docket No. 235).  The Rule 44.1 issue was not raised by either party and was considered *sua sponte*.  Although the Court found against KBR on the Rule 44.1 issue, the Court assumed that KBR had met its burden under Rule 44.1 and fully analyzed the choice of law issues under Pennsylvania law in the second portion of the Memorandum Opinion.  *See Harris*, 2011 WL 2462486, at *9.  As a consequence, KBR's protestations are without merit.

ii.     CPA Order 17 is "Merely a Part of Iraqi Law" and cannot supplant Pennsylvania Choice of Law Rules

KBR further claims that the Court's analysis of CPA Order 17 ignored Pennsylvania choice of law rules.  (Docket No. 242 at 2).  However, KBR presented this identical argument in its Reply Brief, submitted before the Court's Memorandum Opinion was issued, as follows:

A. Coalition Provisional Authority Order 17
Does Not Preclude the Application of Iraqi Law to This Suit

Plaintiffs ask this Court to abandon Pennsylvania's well-settled choice-of-law framework based on a now-defunct order issued by the Coalition Provisional Authority ("CPA") in Iraq.

---

[7]     KBR's challenge to the Court's reasoning is confusing.  On one hand, KBR claims that "[t]he Opinion is internally inconsistent. The first half of the Opinion holds that the controlling Iraqi law is CPA Order 17, and not the Iraqi Civil Code. The second half engages in a choice of law analysis wherein the Court considers the relevant Iraqi law to be the Iraqi Civil Code. If the Court is correct that CPA Order 17 applies, and that the Iraqi Civil Code cannot apply, then the choice of law analysis should consider CPA Order 17 as the relevant Iraqi law."  (Docket No. 242). But, in its introduction, KBR states the correct interpretation of the Opinion – noting that the Court denied its motion "on two separate grounds."  (Docket No. 242 at 1).

The CPA was the governing body established by Coalition forces following the invasion of Iraq. Plaintiffs boldly assert that CPA Order 17 bars this Court from performing any choice-of-law analysis under Pennsylvania law. See Pls.' Opp'n at 4 ("It may not even be necessary for this Court to proceed to a choice of law analysis under Pennsylvania law."). Plaintiffs' argument is fundamentally flawed.

1. CPA Order 17 Does Not Affect the Court's Analysis of Choice of Law

CPA Order 17 was a temporary order issued by a transitional authority whose sole purpose was to govern Iraq. As such, CPA Order 17 does not, and could not, require this Court to disregard Pennsylvania law. To the extent CPA Order 17 has any relevance here, the order would merely define the substance of potentially-applicable Iraqi law. In other words, as at least one other court has readily acknowledged, CPA Order 17 does not supplant a choice-of-law analysis; it merely informs the substance of one forum's law, after such analysis is performed. *See Al Quraishi v. Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010), appeal docketed, No. 10-1891 (4th Cir. Aug. 6, 2010) (performing choice-of-law analysis without regard to CPA Order 17, determining Iraqi law applied under Maryland's lex loci delecti rule, and declining to reach the issue of how CPA Order 17 might affect application of Iraqi law pending further discovery).

(Docket No. 220 at 1-2). As this argument was presented to the Court and soundly rejected, it should not be reconsidered because parties are not permitted to use a motion for reconsideration to simply "re-litigate old matters." *See Miller*, 2011 WL 398408, at *1.

In any event, KBR's argument is misplaced. KBR had the burden to establish foreign law under Rule 44.1 which was independent of any choice of law analysis. *See* Fed.R.Civ.P. 44.1. As this Court recognized, Rule 44.1 places the burden on the parties to both present evidence of the foreign law and to persuade the Court that such foreign should be applied. *Id.* In its initial motion, KBR only requested that three specific Iraqi Civil Code provisions be applied. (Docket No. 215). Therefore, it was entirely appropriate and consistent with the Federal Rules of Civil Procedure and Third Circuit precedent for the Court to first consider whether KBR had met

its burden to present Iraqi law before considering Pennsylvania choice of law rules.  If KBR

failed to meet its burden to present Iraqi law, the substance of Iraqi law would not be established

and Pennsylvania choice of law rules would be applied, without consideration of *any* Iraqi laws.

*See Harris*, 2011 WL 2462486, at \*6-8.  But, in this case, even though the Court found that Iraqi

law (under its Civil Code) was not established by KBR, the Court assumed that it had met its

burden and considered each of the provisions of the Iraqi Civil Code proffered by KBR in its

choice of law analysis.  *See Harris*, 2011 WL 2462486, at \*9 ("Notwithstanding that the Court

has concluded that KBR has failed to meet its burden under Rule 44.1, and KBR's motion fails

on this basis alone, the Court will continue with its analysis of the remainder of the parties'

arguments.").

In his third affidavit, Hamoudi finally offers his opinion regarding section 18 and posits

that it is a choice of law provision rather than a provision of substantive law.[8]  (Docket No. 242-1

at ¶ 7).  Specifically, Hamoudi states, in pertinent part, that:

> As for Section 18 of CPA Order 17, … **the phrase "in a manner**
> **consistent with the Sending State's laws, regulations and**
> **procedures" merely refers to the self-evident (and hardly**
> **worth noting) proposition that the court in the relevant state**
> **will apply its own choice of law rules and its own public policy**
> **limitations to determine which law should apply.**

(Docket No. 242-1 at ¶ 7 (emphasis added)).  This is exactly how the Court proceeded in the

second half of the Memorandum Opinion, which undermines KBR's argument to the contrary.

KBR next complains that the Court erred by not applying CPA Order 17 in its choice of

law analysis but fails to mention how the Court's analysis under Pennsylvania choice of law

---

[8]     This portion of Hamoudi's report appears to run counter to KBR's initial briefing on these issues, where it
argued that "[t]o the extent CPA Order 17 has any relevance here, the order would merely define the substance of
potentially-applicable Iraqi law. In other words, as at least one other court has readily acknowledged, CPA Order 17
does not supplant a choice-of-law analysis; it merely informs the substance of one forum's law, after such analysis is
performed."  (Docket No. 220).   This also calls into question the credibility or reliability of the expert opinion
advanced by KBR.

rules would be any different if CPA Order 17 was considered in the second portion of the Court's decision. (Docket No. 242). Again, the Court's interpretation of CPA Order 17 is that the laws of the sending states, rather than Iraqi laws, apply to personal injury claims for death. *See Harris*, 2011 WL 2462486. Based on this interpretation, the Court would apply Pennsylvania choice of law rules to determine the applicable substantive law. If Iraqi law was not considered, the Court would then analyze the laws of Texas, Pennsylvania and Tennessee in its choice of law analysis. Instead of proceeding in this regard, the Court assumed that KBR had met its burden under Rule 44.1 and analyzed whether the laws of Iraq, Texas, Pennsylvania or Tennessee should be applied. It appears that KBR simply disagrees with the Court's conclusion that Pennsylvania choice of law rules do not dictate that Iraqi law should be applied. *See Miller*, 2011 WL 398408, at *1 ("A party's mere disagreement with the Court does not translate into the type of clear error of law which justifies reconsideration of a ruling."). And, as discussed below, the Court does not find that KBR has met its burden to demonstrate that reconsideration of this aspect of the Court's holding is warranted.

### iii. The Court held that KBR is immune

In yet another challenge to the Court's analysis of CPA Order 17, KBR suggests that the Court held that it is immune under Iraqi law and states that the Court should dismiss the case on this basis. (Docket No. 242 at 4, n. 1). To the extent that KBR makes such suggestion, the Court does not agree. To the contrary, the Court finds that CPA Order 17 provides only that government contractors such as KBR are "immune from Iraqi legal process" and does not provide any immunity from the present lawsuit. (Docket No. 218-2 at § 4.3 ("Contractors shall be immune from Iraqi legal process with respect to acts performed by them pursuant to the terms

and conditions of a Contract or any sub-contract thereto.")).   Therefore, the Court will not dismiss this case on this basis.

### 2.   The Court Engaged in a Flawed Choice of Law Analysis

KBR also contests the Court's choice of law analysis, arguing that the Court erred in its balancing of the interests between the potential jurisdictions.  (Docket No. 242).  It argues that the Court misapplied the facts and gave improper weight to certain of the facts of this case.  (*Id.*). The Court again disagrees.

### i.   The Court Failed to Consider the Interests of Iraq

KBR contends that the Court failed to consider the interests of Iraq.  (*Id.*).  However, in this Court's estimation, KBR conflates two separate issues: (1) the interests of the jurisdiction in the application of its law, which focuses on the policies underlying the legislation of the interested jurisdiction; with (2) the factual circumstances of the present case before the Court. On this first point, as the Court clearly noted in its earlier decision, KBR did not present the Court with any specific policy reasons supporting the proffered Iraqi causation law in this case. *See Harris*, 2011 WL 2462486, at *11, 15.  Instead, KBR only generally stated that Iraq has an inherent interest in applying its law to wrongful conduct that occurred within its borders.[9]  *Id.* KBR's motion could have been denied on this basis alone because it presented the Court with no policy reason why the causation law at issue was developed, i.e., what was Iraq's interest in applying that particular law to the facts of this case.  However, the Court assumed that the policy underlying the causation law was to protect the second negligent actor and analyzed the arguments with this policy in mind.   *Id.* at *15.  Without the Court's assumption, KBR's motion for the application of Iraqi law could have been summarily denied.

---

[9]      The Court notes that Staff Sergeant Maseth's death occurred on an American military base which was controlled by Americans.  *See* p. 14-15, *infra*.

Turning to KBR's present arguments regarding the Court's consideration of Iraq's interests, the Court finds that all of KBR's contentions were previously presented in conjunction with their initial motion.  (See Docket Nos. 220 at 8; 229 at 2).  KBR's own filing demonstrates that its position as to these facts has already been considered.  Specifically, KBR argues now that:

> [f]or example, the Opinion does not address the following facts demonstrating that it was not a "chance occurrence" that the facts underlying this case took place in Iraq: (1) the accident occurred in a hardstand building, LSF-1, that was constructed by Iraqis prior to the military invasion; (2) LSF-1 has continuously been owned by the Iraqi Government, including at the time of the incident; (3) LSF-1 was used by soldiers who were training Iraqi security forces, and these Iraqi security forces were housed nearby, also within the LSF area; (4) LSF-1 was wired— without grounding— by Iraqis; and (5) LSF-1 will be returned to the Iraqi Government after the military withdraws from the RPC. **See Reply in Supp. of KBRSI's Mot. at 8; Suppl. Br. in Supp. of KBRSI's Mot. at 2.**

(Docket No. 242 at 8 (emphasis added)).  The Court dedicated several pages of its Memorandum Opinion analyzing Iraq's interests in this case and a fair reading of the discussion demonstrates that all of these facts were considered.  *Harris*, 2011 WL 2462486, at *9-17.  Indeed, the Court specifically noted, among other things, that "[b]ased on the prior arguments that have been presented to the Court in this case, **the Court understands that KBR's position in this litigation is that the Army was allegedly negligent in its decisions and actions related to housing soldiers in Iraqi buildings with known substandard electrical systems.**  By advancing the causation law under the Iraqi Civil Code, KBR argues that if that law were applied, the Army's negligence would subsume its own negligence, if any." *Id.* at *15.

In addition, KBR has repeatedly interjected the first four facts it raises now into this litigation.  (Docket No. 20, KBR's Brief in Support of Motion to Dismiss; Docket No. 35, KBR's Reply Brief; Docket No. 122, KBR's Supplemental Brief).  However, before filing its

14

motion for the application of Iraqi law, KBR has always taken the position that the United

States' involvement at the RPC and LSF-1 far outweighed any interests of the Iraqis.  *Id.*  Indeed,

KBR has continually argued that the United States controlled its conduct in relation to the

LOGCAP III contract and KBR's provision of maintenance services to the military at the base.

(*See, e.g.*, Docket No. 35 at 5 (noting "the all-encompassing envelope of military direction and

control that surrounded KBRSI's maintenance efforts at RPC.").  KBR has also raised numerous

defenses to this litigation which arise under the United States' Constitution, statutes and Rules.

(*See* Docket No. 217, KBR's Answer to Amended Complaint).[10]  Also, the fifth fact, that LSF-1

will be returned to the Iraqi government after the military withdraws from Iraq, has yet to occur

and has no real bearing on the activities on the base at the time of the incident underlying this

lawsuit, January 2, 2008.

　　To reiterate, from this Court's view, the United States' interests in this litigation far

outweigh the supposed interests of Iraq raised by KBR.  While Iraq may have initially erected

the buildings[11] in question during the reign of Sadam Hussein, the United States went to war

against Iraq, and successfully invaded that country.  As a result, Iraq's government was displaced

by the Coalition Provisional Authority, an interim government which was run by a joint coalition

of nations, headed by the United States.  The United States then engaged KBR and other

contractors to provide certain services to the military during the occupation.  In some cases, like

---

[10]　　Specifically, KBR has raised the following defenses: that this Court lacks subject matter jurisdiction over the case; that Plaintiffs' claims are barred by the political question and separation of powers doctrine; that Plaintiffs' claims are barred by the government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); and Plaintiffs' claims are barred under the "combatant activities" exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(j).  (Docket No. 217).  The Court notes that the United States Court of Appeals for the Fourth Circuit recently addressed several of these defenses.  *See e.g., Taylor v. Kellogg, Brown & Root Services, Inc.*, --- F.3d ----, 2011 WL 4379353 (4th Cir. Sept. 21, 2011); *Al Shimari v. CACI Intern., Inc.*, --- F.3d ----, 2011 WL 4382081 (4th Cir. Sept. 21, 2011); *Al-Quraishi v. L-3 Services, Inc.*, --- F.3d ----, 2011 WL 4382115 (4th Cir. Sept. 21, 2011).
[11]　　The Court will not belabor the point, as the Court has addressed it multiple times throughout this case, but Plaintiffs allege that KBR was both actively negligent in its maintenance of the facility and mishandling of the water pump and by failing to warn Staff Sergeant Maseth of the known electrical dangers found in its inspection.  (Docket No. 209).

15

in *Saleh*, the government contractors were engaged to provide military support and those contractors effectively acted as soldiers. *See* n.2, *supra*. In others, as here, KBR provided routine electrical maintenance services with no real connection to the military operation, except, as KBR points out, for the fact that the services were provided on a military base on foreign soil. However, KBR's multi-million dollar "contracts with the Army, including the LOGCAP III base contract and Task Order 139 at issue here, make no reference to Iraqi law or Iraqi standards for construction, electrical work or plumbing services."[12] (*See e.g.*, *LOGCAP III contract*; *LOGCAP III Contract, Statement of Work*; *Task Order 139*); *see also Harris*, 618 F.Supp.2d at 403-415 (describing the contracts at issue). Iraq was not a party to the contracts between KBR and the military and Iraq had no control over the United States, KBR, or the contractual relationship between them. (*Id.*). In fact, pursuant to the contracts, KBR inspected the facilities and performed certain maintenance services at the base and at all times reported to the military and the Defense Contract Management Agency – not to Iraq.

Further, this Court remains convinced that CPA Order 17 wholly undermines any tangential interest that Iraq may have had in its laws applying to government contractors such as KBR during the time in question. To this end, "Order 17 expressly provides that such contracts may be awarded in accordance with the laws of the United States. CPA Order 17, § 4.1. Order 17 also states that government contractors were: not subject to Iraqi laws or regulations in relation to the terms and conditions of their contracts; immune from Iraqi legal process; and that certain claims by third parties should be dealt with in accordance with the laws of the United States. CPA Order 17, §§ 4.2, 4.3, 18."[13] *Harris*, 2011 WL 2462486, at *18. This conviction is particularly appropriate given

---

[12]     Of course, if KBR wanted Iraqi law to govern its contractual relationship with the United States, it could have negotiated its contracts to so provide. It did not.

[13]     The Court again notes that the term "immunity" referred to here is that set forth in CPA Order 17 and the Court's reference to same does not in any way make KBR immune from this lawsuit. Moreover, it references Iraqi legal process while this action is pending here. *See discussion* at § IV(B)(1)(iii), *supra*.

that the third parties who were allegedly injured in this case by KBR were American (indeed an American serviceman and his parents) rather than Iraqis – who arguably may have expected Iraqi law to apply.

In sum, as the Court previously held, Iraq's negligible interests in this case are far outweighed by those of the United States and the controlling law of the United States will be applied, i.e., the relevant contract and tort law in one of the interested jurisdictions, Pennsylvania, Tennessee or Texas.

ii.     The Court Gave Improper Weight to Plaintiffs' State of Residence and Failed to Appropriately Consider the Interests of Texas

KBR also argues that the Court improperly weighed the interests of Pennsylvania and Texas.  (Docket No. 242).  However, the Court expressly held that it would revisit its conflicts of laws analysis as to the interested states, including Texas, Pennsylvania and Tennessee, at a later date.  *See Harris*, 2011 WL 2462486, at *21 ("Based on the foregoing, KBR's motion to apply Iraqi is denied. The Court's holding is limited to this issue and the Court expressly reserves ruling as to which of the interested states' laws apply to Plaintiffs' claims and KBR's defenses in this action going forward.").  Therefore, KBR will be given the opportunity to further address its position as to the applicable laws.  But, for clarity, the Court will briefly consider KBR's positions set forth in its motion for reconsideration.

As to the Court's consideration of Pennsylvania's interests, KBR contends that "[b]y looking to the place where the effects of an injury are felt, the Court gave improper weight to the factor of the Plaintiffs' state of residence, and thereby committed legal error. *See Blakesley v. Wolford*, 789 F.2d 236, 241 (3d Cir. 1986) ('In all personal injury actions, the effects of an injury necessarily follow a plaintiff to his or her state of residence . . . looking to the place where the

17

effects of an injury will be felt gives improper additional weight to the factor of the plaintiff's state of residence')." The Court disagrees that any such error was committed.

First, KBR relied on *Blakesley* in its initial briefing and the Court was not persuaded by this argument at the time. (*See* Docket No. 216). As a consequence, KBR again misuses a motion for reconsideration to re-litigate old matters. *See Miller*, 2011 WL 398408, at *1.

Second, in this Court's opinion, *Blakesly* is distinguishable and not controlling in this case. *Blakesley* was a medical malpractice action. *Blakesley*, 789 F.2d at 236. The plaintiff in *Blakesly* was a Pennsylvania resident who was allegedly injured during a medical procedure performed on him in Texas, by a Texas doctor. *Id*. at 236-38. There, the Court of Appeals found error with the district court's reliance on the fact that the effects of the plaintiff's injuries followed him to Pennsylvania when he returned here. *Id.* In contrast, Staff Sergeant Maseth was killed instantly in Iraq and did not return to Pennsylvania. Indeed, KBR takes the position that Staff Sergeant Maseth was a resident of Tennessee rather than Pennsylvania at the time of his death. (*See* Docket Nos. 220; 226 at 3). So, Pennsylvania's interest in this case is not based on Staff Sergeant Maseth's former residency in the Commonwealth. Instead, Pennsylvania's interest is tied to the claims advanced by Staff Sergeant Maseth's estate which include claims asserted on behalf of his parents – the named plaintiffs – who are and always were in Pennsylvania. (Docket No. 209). Because they were always in Pennsylvania, their alleged injuries and resultant damages stemming from their wrongful death claims necessarily occur here. As a consequence, the location of his parents' injuries and damages was properly considered.

KBR further maintains that the Court failed to consider the interests of Texas regarding the causation issue. (Docket No. 242). Specifically, KBR argues that Texas law is not "pro-

plaintiff" as the Court states in its Memorandum Opinion and that the Court's holding runs counter to Texas Civil Practice and Remedies Code § 33.004. (*Id.*). However, KBR again misunderstands the Court's ruling.[14]

To this end, KBR requested that three specific provisions of the Iraqi Civil Code should be applied to this case in its motion for the application of Iraqi law. (Docket Nos. 215, 216). With respect to the causation law proffered by KBR, the Court held the following:

> Under Iraqi law, a second negligent party will not be held responsible if "one of the causes is the result of the other" or, stated differently, "where there are two negligent acts, one built upon and the product of another, the second negligent act is 'drowned out' by the first, and is no longer considered a cause of harm." (*Id.* at ¶¶ 38–40). In his reports, Professor Hamoudi does not provide a precise opinion as to the policy underlying this principle of law. (*See* Docket No. 216–1). However, the logical reason for such a policy is to protect the second actor from liability where the harm to the plaintiff would have occurred without any action (or, presumably, inaction) by the second actor. Assuming this is the stated policy reason for the law; Iraqi law protects subsequent defendants from being subject to damages in such situations but also places the full burden to compensate the plaintiff for the harm caused on the initial negligent actor.

*Harris*, 2011 WL 2452486, at *11 (footnote omitted). The only aspect of Texas law upon which the Court commented as "pro-plaintiff" was the "instant causation issue" – i.e., whether the Court should apply the Iraqi Civil Code section described above, that a second negligent actor has no liability. *Id.* at *17. None of the potentially interested states, Texas, Pennsylvania or Tennessee, apply such a law. *Id.* In particular, the Court found that Texas employs a form of comparative negligence. *See id.* at * 13 (citing Tx.Civ.Prac. & Rem. Code §§ 33.001, 33.003). As the Court recognized, the proffered Iraqi causation law is pro-defendant. If the Court would apply it (and the Court will not) it would curtail this litigation given KBR's argument that Staff

---

[14]     The Court recognizes that Texas has been one of the leading states in tort reform. *See* Tx. Civ. Prac. & Rem. Code §§ 33.001, *et seq.* But, such reform has not stretched to the extent that it could be considered in accord with the proffered Iraqi laws.

Sergeant Maseth's death and injuries were caused by the United States' (or the Army's) actions and not its own.  In this Court's opinion, all of the interested states have pro-plaintiff laws when compared to the cited Iraqi Civil Code provision.  When read in the proper context, there is nothing erroneous about the Court's statement.

In addition, the law which is now cited by KBR, Texas Civil Practices & Remedies Code 33.004, was never raised in its initial briefing.  (Docket Nos. 215, 216, 220, 229).  By virtue of the Court's Order expressly reserving the parties' respective rights to litigate which of the states' laws apply, KBR will be given another opportunity to argue that Texas law, including Texas Civil Practices and Remedies Code § 33.004, should be applied at the appropriate time.  However, reconsideration of the prior order is not warranted on this basis at this time.

### 3.   The Court Relied on Erroneous Statements of Fact

KBR also maintains that the Court relied on an erroneous finding of fact in support of its decision, i.e., that "[t]**he evidence previously presented to the Court suggests that KBR fixed the actual water pump on more than one occasion and was aware that it had caused other soldiers to be shocked in the same shower where Staff Sergeant Maseth was killed.** *See Harris*, 618 F.Supp.2d at 413-14."  *Harris*, 2011 WL 2462486, at *15 (emphasis added).  As recognized by the citation above, this statement is supported by the Court's Memorandum Opinion denying KBR's motion to dismiss, wherein the Court found that:

> After the February 10, 2007 TI was completed, several service order requests were made to KBR regarding maintenance issues at the LSF-B 1 building. Some of these are relevant to the instant case. Specifically, Sergeant First Class Justin Hummer was housed in the same living quarters as Staff Sergeant Maseth at the RPC immediately prior to Staff Sergeant Maseth. (Docket No. 28-2 at 8). He lived at LSF-B1 from June 2007 to October 2007. (*Id.*). **SFC Hummer was shocked four to five times while using the shower in the same restroom in which the electrocution of Staff Sergeant Maseth occurred.** (*Id.*). **SFC Hummer testified that**

20

> **each time he was shocked, a service order request was filled out and presented to the Mayor's Cell.** (*Hummer Deposition 8/21/08, Defendant's Exhibit 3 to 8/27/08 Motion Hearing ("Hummer Deposition")* at 67). **KBR representatives responded to each of these requests and completed the maintenance services.** (*Id.* at 67-68). **During these maintenance calls, KBR inspected the water pump on the roof of LSF-B 1, replaced a pressure switch on the water pump and replaced a heating coil on the water tank.** (Docket No. 28-2 at 9).FN15 **SFC Hummer also testified that after the work was completed, the shocking events subsided for some time.** (*Id.* at 68).
>
> FN 15 Plaintiffs also maintain that KBR installed the water pump in question, relying on an email communication from Amber Wojnar, A SAC, MNF-1 Slayer to Plaintiffs. (Docket No. 121-8). That email states that **"[a] Filipino plumber admitted to installing the pump on the roof during the previous KBR project in 2006. So, it was in fact conducted during KBR's time at RPC, and was not a bi-product of Iraqi engineering as previously alleged."** (*Id.*).

*Harris*, 618 F.Supp.2d at 413-14 (emphasis added).   In opposition to the present motion, Plaintiffs advance additional evidence in support of the Court's statement of facts, including the Office of Inspector General, Department of Defense Report on Staff Sergeant Maseth's death, which stated that:

> We determined that ***KBR installed the pump on the roof which contributed to the electrocution of SSG Maseth***, as well as adjacent water tanks during the first week of June 2006. We reached that determination based on KBR work order documents, interviews with four LSF-1 occupants and a KBR subcontracted plumber and photographs of LSF-1.

(Docket No. 244 at 7 (quoting *DOD-IG Report*, p. 3 (emphasis added by Plaintiffs)).

In light of the foregoing, the Court still believes that its recitation of the evidence is supported by the extensive record in this case.   In any event, the Court only noted that the evidence "suggests" that KBR fixed the water pump and was aware of shocking incidents. *Harris*, 2011 WL 2462486, at *15.   The Court recognizes that KBR continues to deny these facts

but KBR has offered no hard evidence which refutes the Court's earlier holding or the statement in the DOD-IG's report.  (*See* Docket Nos. 242, 242-1, 242-2).  Therefore, KBR has failed to demonstrate to this Court that it committed any factual errors and its motion for reconsideration is denied to the extent that it relies on such arguments.

4.   KBR's Request to Hold Off Ruling on Motion Until After Discovery

KBR further notes that the Court should have held off ruling on the choice of law issue until after discovery.   (Docket No. 242).  In this Court's estimation, this claim is disingenuous and runs counter to its attorneys' multiple requests for early presentation and disposition of this motion, as detailed below.

Upon remand from the United States Court of Appeals for the Third Circuit, this Court ordered the parties to file a joint discovery plan.  (Docket No. 195).  In response to this Order, the parties filed separate plans and KBR stated in its plan that it "intends to file a motion regarding choice-of-law at an early stage in the discovery period so that, to the extent the applicable law demonstrates that discovery regarding the merits of particular claims asserted by Plaintiffs is warranted, the parties can tailor their discovery efforts as appropriate."  (Docket No. 197 at ¶ 13).  Regarding this request, the Court and counsel engaged in the following exchange during the second session of the case management conference on November 23, 2010:

> MR. LUCIANA: We did raise in our Rule 26 report, Your Honor, that we anticipate a motion relating to the applicable law.
> THE COURT: Right. We've seen that.
> MR. LUCIANA: The way we understand the conflict of law principles, it's very possible that Iraqi law applies here. So, we would like to brief the Court on that point.
> THE COURT: Okay. So, when are you going to do that?
> MR. LUCIANA: I would have to confer with my team.  **But sooner rather than later**.
> THE COURT: Okay.

>MR. LUCIANA: So, if you -- we would anticipate or we could, as a goal, shoot for sixty days for that which would coincide with the written discovery period.
>THE COURT: Okay. And then, Mr. Cavanaugh and company, how long is it going to take you to respond to that? Thirty days? Sixty days?
>MR. CAVANAUGH: Thirty's fine.
>THE COURT: Once you've each briefed the issue, if either one of you want argument, it's as simple as e-mailing Mr. Kravetz or Mr. Galovich and we'll get you in to argue those. …

(Docket No. 200 at 38-39 (emphasis added)).

Subsequent to the conference, the Court ordered that "any motion by Defendant regarding the choice of law issue shall be filed by 1/28/11 and any response to same by Plaintiffs shall be filed by 2/28/11. Further briefing will be permitted with leave of Court only and oral argument will be scheduled upon the request of the parties." (Docket No. 198). KBR then requested a continuance of said deadline, which the Court granted, and filed its motion, supporting brief and expert affidavit on February 4, 2011. (Docket No. 215, 216). Plaintiffs responded to KBR's motion and KBR then filed a reply brief and a supplemental expert affidavit. (Docket No. 221). Oral argument was held at KBR's request on April 5, 2011. (Docket Nos. 223, 226). At the end of the April 5, 2011 hearing, the Court advised that: "[o]nce again, this presents a very interesting issue. As I said, we've already spent substantial time in looking at this. Once we get the briefing, I would hope that we would be able to render a decision in 30 days or less." (Docket No. 226 at 71-72). No objections were raised to the Court's self-imposed deadline.

Supplemental briefing was submitted by the parties on April 27, 2011 and May 5, 2011, respectively. (Docket No. 229, 231). The Court issued its Opinion on June 17, 2011, approximately 45 days after the matter was fully briefed.

In sum, KBR's request to hold off resolution of its motion for the application of Iraqi law flies in the face of the procedural history of the present motion and the fact that the disposition of the motion was expedited pursuant to KBR's request.   Therefore, to the extent that KBR seeks reconsideration of the timing of the Court's decision, said motion is likewise denied.

V.  CONCLUSION

Based on the foregoing, KBR's motion for reconsideration [241] is DENIED.   The Court's prior ruling that Iraqi law will not be applied to this litigation stands.   An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

Date:   September 23, 2011

cc/ecf:  All counsel of record